(No. 10914.—Judgment affirmed.)

WILLIAM F. HOBBS, Defendant in Error, *vs.* THE MONARCH REFRIGERATING COMPANY, Plaintiff in Error.

*Opinion filed February 21, 1917—Rehearing denied April 4, 1917.*

1. WAREHOUSES—*when customer is not bound by settlement for goods damaged by fire.* A public warehouse company and its customer occupy a fiduciary relation, requiring good faith by the company in settling with the customer for goods damaged by fire, and the customer is not conclusively bound by his settlement where he is not shown to have been fully informed as to the facts or that he received all he was entitled to.

2. SAME—*when customer's right is not limited to his share of insurance money.* Where a customer's goods, insured in his favor by a public warehouse company, are damaged by a fire in the warehouse, he is entitled to receive not only his proportion of the insurance money paid to the company but also his proportion of the amount realized by the company from the sale of the damaged goods, unless, with full knowledge of the facts, he settles with the company for a less amount; and the burden is upon the company, in a suit in equity by the customer for an accounting, to show the settlement was in good faith and with full knowledge of the facts.

3. SAME—*when customer is entitled to recover average price per pound received for damaged goods.* Where it is shown that a public warehouse company, in selling poultry damaged by a fire in the warehouse, could have separated the poultry of a certain customer from the rest, so that the amount received therefor could have been ascertained, it is not error, in a suit by the customer for an accounting, to allow him to recover the average price per pound for which the damaged poultry was sold, there being no proof by the company as to the actual amount received.

4. SAME—*rule where commodity in storage is mixed by accident.* Where a commodity, such as poultry, becomes mixed in the warehouse by accident for which the warehouseman is not responsible, the original owners become tenants in common of the mass, bearing proportionately any loss and being entitled in equity to their just proportion of the damaged poultry as tenants in common.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

MANCHA BRUGGEMEYER, (SIMEON STRAUS, of counsel,) for plaintiff in error.

SHEPARD, McCORMICK, THOMASON, KIRKLAND & PATTERSON, (LOUIS G. CALDWELL, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendant in error filed a bill in the superior court of Cook county against plaintiff in error praying for an accounting. After the pleadings were settled the case was referred to a master, who reported that defendant in error should be allowed the sum of $4328.70, with interest from August 16, 1911. Thereafter a decree was entered by the court allowing the same amount, in accordance with the finding of the master. On appeal to the Appellate Court the decree of the superior court was affirmed. The case has been brought here on petition for *certiorari*.

Plaintiff in error was engaged in the public warehouse and cold storage business in Chicago and defendant in error was in the wholesale produce and commission business in the same city, dealing principally in poultry. Prior to March 19, 1911, he had delivered to plaintiff in error for storage, merchandise of the value of over $21,000, consisting chiefly of poultry. Warehouse receipts were issued and delivered for said poultry, and also an insurance certificate, wherein plaintiff in error agreed to insure the poultry for the full amount, the policy to be payable to plaintiff in error as trustee for defendant in error, and in case of loss by fire plaintiff in error was to act as agent in the collection of the insurance. Plaintiff in error paid the insurance premium and debited it to defendant in error, who was also indebted on March 19, 1911, to plaintiff in error on various notes aggregating $12,133, secured by the poultry stored in the warehouse, and was obligated by a further indebtedness of $1175.41. On said last mentioned date a fire started on

the fifth floor of the warehouse. At that time there were stored therein some 2,250,410 pounds of butter and 1,033,-960 pounds of poultry belonging to different persons, including defendant in error. All of the poultry and butter were destroyed or damaged by fire and water. The master found, and the evidence shows, that of defendant in error's property something over 91,000 pounds was included in that which was not totally destroyed by fire, and the evidence tends to show it was included in the salvage sold by plaintiff in error. Plaintiff in error after the fire proceeded to adjust the loss with the insurance companies and collected on defendant in error's property $11,231.63. The latter was not satisfied with the settlement made with the insurance companies and employed an adjuster to look after his interests, an adjuster also having been employed by plaintiff in error. During the discussion over the settlement and the sale of damaged poultry the evidence shows that defendant in error took some of the damaged poultry and tried to sell it, but found that the smoke odor was so objectionable that he could not dispose of any of it, and he so informed plaintiff in error. After considerable discussion over a settlement defendant in error was informed by his adjuster in August, 1911, that plaintiff in error was prepared to settle his claim. A meeting was had between the adjusters of the parties and defendant in error on August 16, 1911. He objected to the settlement offered by plaintiff in error through his adjuster, but after some talk, and on being told that it was all it would pay, he agreed to settle upon a basis of $15,418.94 for the full value of his property at the time of the fire. After deducting the amount due and owing from him plaintiff in error paid defendant in error the balance, amounting on this basis to $2110.53, and took a receipt from him, which stated that it was "in full of all claims and demands against the Monarch Refrigerating Company growing out of the fire of March 19, 1911." Plaintiff in error disposed of all the damaged poultry after

the fire, amounting to 497,861 pounds, for $45,899.26, or an average of 9.2 cents a pound.   It kept no record from which could be ascertained the prices and amount received for defendant in error's damaged poultry, which was included in the total amount so sold.   The master's finding and the decree of the circuit court were that plaintiff in error was liable for defendant in error's poultry included in this sale of the damaged poultry at the average price for which the total was sold,—that is, 91,691 pounds at 9.2 cents a pound, or $8435.57.   This amount, added to the insurance collected by plaintiff in error on defendant in error's policy, $11,231.63, made the total amount defendant in error was entitled to receive $19,667.20, or a balance over the $15,418.94 that he settled for August 16, 1911, of $4248.26, the amount for which the decree in the court below was entered.

Counsel for plaintiff in error insist the settlement made between the parties August 16, 1911, and the receipt given on that date in full of all claims, are binding on the parties. This would be true if the parties at that time were dealing as strangers, at arm's length, or, even though there were a fiduciary relation existing between them, if the evidence showed clearly that the settlement was one of good faith on both sides, with full knowledge and independent consent and action on the part of defendant in error.   Without doubt, at the time of this settlement there was a fiduciary relation between the parties.   This is practically conceded by counsel for plaintiff in error.   The case here falls within that class concerning which it has been said that when the two parties consciously and intentionally deal and negotiate with each other, each knowingly taking a part in the transaction, such transaction is "not necessarily voidable,—it may be valid; but a presumption of its invalidity arises, which can only be overcome, if at all, by clear evidence of good faith, of full knowledge and of independent consent and action." (2 Pomeroy's Eq. Jur.—3d ed.—sec. 957.)   In such

case, unless the parties are fully acquainted with their own rights and the nature and extent of the liability of the trustee, a full statement of all the accounts and other transactions of the trustee should unquestionably be furnished by the trustee to his *cestui que trust,* together with all the information required for explaining and understanding such statement. (*Jones* v. *Lloyd,* 117 Ill. 597; 2 Perry on Trusts,—6th ed.—sec. 923.) Such a transaction is *prima facie* voidable, at the option of the grantor, upon grounds of public policy. The existence of a confidential relation creates a presumption of influence, which may be rebutted by proof that the parties dealt as strangers and that no unfairness was used; that the facts in the knowledge of the one in the superior position affecting the matter were communicated to the other; that the entire transaction was made in the most perfect good faith and was equitable and just. *Fish* v. *Fish,* 235 Ill. 396; *Voorhees* v. *Campbell,* 275 id. 292; *Beach* v. *Wilton,* 244 id. 413.

Counsel for plaintiff in error insist that as the evidence tends to show that defendant in error received what his property was actually worth at the time of the fire, the settlement between them was fair and just and that nothing further can be required. In view of the trust relation existing between the parties, defendant in error was entitled not only to receive what his property was actually worth at the time of the fire but more than that, if in adjusting the loss with the insurance companies several months later and in disposing of the damaged property remaining plaintiff in error realized more than the fair value of defendant in error's property at the time of the fire. Defendant in error was entitled to receive his proper proportion of this insurance as well as the proper proportion of what the damaged property sold for, unless the proof shows clearly that he understood fully all the facts and circumstances with reference to the settlement with the insurance companies and the sale of the damaged property at the time he made the

settlement with plaintiff in error. The refrigerating company was required, in view of the relations existing between the parties, to account to defendant in error for all the proceeds of his poultry, and was not justified, under the law, in making any settlement with him by which said company could make a profit on those goods, unless at the time of the settlement it fully explained everything in connection with the transaction. It is clear from this record that at the time of the settlement defendant in error did not understand all the facts and did not know that plaintiff in error would be profiting by the settlement. He had been informed correctly by the officers of plaintiff in error as to the amount that the insurance companies were paying in cash. He also knew that all the goods were not destroyed, but he did not know all the terms of the settlement with the insurance companies and that plaintiff in error under this settlement was permitted to sell the salvage and retain the proceeds. He was given to understand that the matter had been gone over very thoroughly with the insurance companies and that they were settling on the best possible figures the refrigerating company could obtain, and the fair conclusion from the statement was that the cash settlement with the insurance companies included all that would be received and did not leave the refrigerating company any salvage to convert into additional money. It seems clear that he was given to understand at the time of this settlement that approximately $15,000 was the full amount that was to be received by plaintiff in error as the proceeds of defendant in error's property, including that directly paid by the insurance companies in cash and also that part received from the sale of the damaged poultry. In no place in the testimony is there evidence tending to show that defendant in error knew what the real settlement was between plaintiff in error and the insurance companies. He was told by plaintiff in error's adjuster at the time of the settlement on August 16, 1911, that was all the plaintiff in error would

pay; that he could take that amount or leave it, as he saw fit. No attempt was made at that time or any other time to explain to him the details of the settlement with the insurance companies or as to the total amount of the proceeds received by the refrigerating company therefrom. The decree, and the master's finding as to the amount of proceeds received by plaintiff in error from the insurance companies and the sale of the defendant in error's portion of the damaged poultry, were correct. We think the evidence fully justified this finding and decree.

Counsel for plaintiff in error also argue that the court erred in reckoning the amount which it was decreed should be paid per pound for the damaged poultry sold. In an action to recover the proportionate share of the property or goods confused by another it is not necessary to identify the exact article or the exact property formerly owned. The proof tends to show that plaintiff in error could have separated the damaged goods of defendant in error from the other goods injured and thereafter sold as salvage. Not having done so, it is clear that under the authorities it was properly held liable by the decree for the average price received in the sale of such goods. (8 Cyc. 576; *First Nat.* *Bank of Elgin* v. *Schween,* 127 Ill. 573; 5 R. C. L. 1052.) The burden of establishing the number of pounds of salvage sold by plaintiff in error belonging to defendant in error, and the prices received therefor, was upon plaintiff in error. Having failed to make this proof it cannot now be heard to complain because it is required to pay the average price for which such damaged goods sold.

But conceding that, as argued by counsel for plaintiff in error, the goods were mixed by an inevitable accident for which plaintiff in error was in no way responsible, then, under the law, the original owners become tenants in common of the mass, bearing proportionately any loss and being entitled in equity to their just proportion of the damaged poultry as tenants in common. This rule is applicable where

logs become intermingled by reason of an extraordinary flood, or where a ship is wrecked and a part of its cargo is lost and the remainder is intermixed beyond identification, the owners being tenants in common of the portion of the cargo which is saved. (5 R. C. L. 1054.) Under this rule, even though the plaintiff in error was in no way responsible for the intermingling of the goods, the decree of the circuit court in this regard and the judgment of the Appellate Court must be upheld.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*