[L. A. No. 2797. In Bank.—March 12, 1913.]

## M. L. BELLUS, Respondent, v. D. L. PETERS, Appellant.

FRAUD—ASSOCIATION TO PURCHASE PROPERTY—FIDUCIARY RELATION—
AGENCY.—Parties who associate themselves together for the purchase
of a gas plant, under an agreement whereby they were each to con-
tribute to the purchase price in stated proportions, and were to be-
come stockholders in equal shares in a corporation to be organized
by them to take over the property, stand in a fiduciary relation to
each other, and one of them, who conducts the negotiations for the
purchase as the representative of the associates, acts in the transac-
tion as their agent.

ID.—FALSE REPRESENTATIONS BY ASSOCIATE AS TO PURCHASE PRICE—IN-
TEREST IN PROPERTY ACQUIRED WITHOUT PAYMENT OF CONSIDERA-
TION—CONVERSION OF CORPORATE STOCK.—If by reason of the false
and fraudulent statements made by such agents to his associates re-
specting the amount of the purchase price of the property, the same
was acquired without the payment by him of any part of his pro-
portion thereof, and with the intent by him never to pay it, and
thereafter, in pursuance of such association agreement, there was
issued to him his allotment of the stock in the corporation organized
to take over the property, the defrauded associates may maintain an
action against him to recover the value of the stock so issued and
converted by him to his own use.

ID.—RESCISSION OF ASSOCIATION AGREEMENT—OFFER TO RESTORE UNNEC-
ESSARY.—Under such circumstances, the stock issued to the fraudu-
lent associate belonged to the coassociates who had paid the entire
consideration therefor, and it was not necessary for them, to effect
a rescission of such agreement, to offer to restore anything to the
former in order to place the parties in *statu quo.*

ID.—WEIGHT OF EVIDENCE—CASES TRIED BY COURT.—The rule that jurors
are not bound to decide in conformity with the declarations of any
number of witnesses, which do not produce conviction in their minds,
against a less number or against a presumption or other. evidence
satisfying their minds, applies with equal force to instances where
the case is tried by the court.

ID.—FINDING AS TO AMOUNT OF PURCHASE PRICE—CONFLICT OF EVIDENCE.
In consideration of the foregoing rule, and in view of all the circum-
stances and the conduct of the parties, as shown by the record, it
is held, that the finding of the trial court as to the amount of the
purchase price actually paid for the property in question, is sus-
tained by the evidence, notwithstanding the conflicting testimony of
the seller and the defendant.

ID.—DEFRAUDED ASSOCIATES MAY SUE FOR CONVERSION AFTER PARTING WITH INTEREST IN PROPERTY PURCHASED.—The fact that the defrauded associates had parted with their allotments of stock in the corporation organized to take over the property purchased, did not affect their right to recover the value of the stock so fraudulently acquired and converted by their coassociate.

ID.—ADMISSION OF CONVERSION AND VALUE OF PROPERTY—OFFER TO RETURN.—In an action to recover the value of the stock so converted, in which the conversion of the stock was admitted and its value conceded, it was not necessary for the court to order, through its judgment, the return of the stock by the defendant as a condition precedent to the entry of judgment for the plaintiff.

ID.—EVIDENCE—PARTY BOUND BY STATEMENTS OF OWN WITNESS—EXTENT OF RULE.—The rule that a party is bound by the statements of his own witness, does not go to the extent of requiring the court to believe and accept as true the statements of such witness.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Tanner, Taft & Odell, and Hunsaker & Britt, for Appellant.

John W. Kemp, John S. Mitchell, M. B. Silberberg, and Kemp, Mitchell & Silberberg, for Respondent.

SHAW, J.—"The action was one by Bellus in his own behalf and as assignee of John W. Kemp to recover the price and value of a certain 40,000 shares of stock in a corporation, alleged in the complaint to be the property of plaintiff and by said defendant converted to his own use. The court found the allegations of the complaint to be true and the value of the stock to be $10,000 and rendered judgment accordingly against defendant Peters. From this judgment, and from an order denying a new trial, defendant appeals.

"The allegations of the complaint, in substance, are these: That in January, 1909, one Willits was the owner of a gas plant in Orange County; that Peters, Bellus and Kemp entered into negotiations for its purchase; that Peters, representing Bellus and Kemp, conducted the negotiations and reported to his associates that Willits' price for the gas plant was

$28,500, $6000 of which was to be paid in cash, a mortgage thereon for $10,380 to be assumed by the purchasers, and that the balance of the purchase price, to wit: $12,120, should be secured by a second mortgage upon the property so to be purchased; that plaintiff and Kemp, believing these representations of Peters to be true, entered into a contract with Peters whereby they mutually agreed that the three should purchase the plant at the price above named, and further agreed that when purchased the title thereto should be taken in the name of plaintiff, who was to hold the same in trust for himself and the other two parties; that of the cash payment Bellus was to contribute $5,000, Peters $1000 and Kemp, an attorney, was to contribute his labor and skill in and about the incorporation of a new company to take over such property, and to pay all fees necessary to effect such organization; that when said property was acquired it should be conveyed by Bellus to the new corporation so to be organized through Kemp's efforts, which corporation was to have a capital stock of 200,000 shares of the par value of one dollar each, and the stock of such new corporation was to be equally divided between the three parties; that relying upon such representations, plaintiff contributed his $5,000 and Kemp his skill and services as agreed, but Peters did not pay the $1,000 agreed to be paid by him, and it is averred that Willits, upon receipt of the $5,000 contributed by Bellus and the assumption of the mortgage and the execution of a second mortgage, made the conveyance as agreed. It is averred that the representations of Peters that the purchase price was $28,500 were false; that as a fact the purchase price of said business was $27,500, and the amount of cash to be paid was $5,000; that the representation made by Peters that under the agreement he was to pay $1,000 was untrue, that he never did pay the $1,000 and never intended so to do; that the purchase by Bellus and Kemp was based upon their belief in the truth of the statements and representations of Peters. It is further averred that after the gas plant was transferred by Bellus to the new corporation, of its capital stock of 120,000 shares were issued, 40,000 to each of the three purchasers; that neither Bellus nor Kemp had knowledge of the falsity of Peters' representations until September following, upon learning which they served notice upon him of their rescission of the agreement existing between them

with reference to the purchase, and they demanded of Peters that he surrender to them the 40,000 shares of the stock so issued to him as having been issued without any consideration and which in equity and good conscience belonged to Bellus and Kemp, they having paid the whole consideration therefor; that Peters refused to comply and has not complied therewith, and has converted all of the stock so held by him to his own use; that the market value of the stock is $10,000. The plaintiff by assignment has become the owner of Kemp's rights in the premises.

"The answer of Peters denies that $27,500 was the consideration price to be paid; that, on the contrary, $28,500 was the lowest price that Willits would receive. He alleges that the $1,000 which he contributed was covered by $1,100 commission earned by him, and which Willits agreed to pay and did pay for his services in effecting the sale. He denies that $6,000 cash was not paid to Willits, but alleges that Bellus paid $5,000 and he paid $1,000 of the cash consideration. Defendant, by an amendment to his answer with reference to his statements as to the amount of commission received, places the amount at $100, instead of $1,100 originally alleged to have been received by him. However, there is no denial of the fact that defendant received the 40,000 shares of the stock and converted the same to his own use, and that such stock was of the value of $10,000.

"The court found the allegations of the complaint to be true; found that the representations of Peters as to the amount of money necessary to purchase the plant were untrue; that in truth and in fact the purchase price of said gas business and property was $27,500, and that the amount of the cash payment so to be made under the agreement was $5,000; that Peters never paid his $1,000, or any sum, and never intended so to do; that he made the representations as to his intention to pay and his payment with the intent to cheat and defraud plaintiff and said Kemp, his associates; that they relied upon these representations and believed them to be true, and in the absence of such representations would not have entered into the transaction. The court found that due demand was made upon Peters to surrender to Kemp and Bellus the amount of the stock by him held and received without consideration,

which demand was refused and the stock converted by defendant to his own use.

"Appellant's first contention is that the complaint does not state facts sufficient to constitute a cause of action. We think this criticism cannot be maintained. From the allegations of the complaint it appears that a fiduciary relation existed between Peters and his associates by virtue of the agreement, and that Peters' negotiations with the owner of the gas plant were as agent of the association. The false and fraudulent statements alleged to have been made by such agent, and the obtaining of property in connection therewith in fraud of his associates, and without consideration, in our opinion, was a statement of fact sufficient to entitle plaintiff to a judgment for the value of the stock issued to defendant without consideration and in fraud of plaintiff and by defendant converted to his own use.

"The principal contention of appellant is that the finding, that the agreement between Peters and Willits was that Willits should receive $27,500 only for the property, $5000 of which was to be received as the cash payment and the residue by mortgage, has no support in the evidence. This contention is based upon the fact that Willits testified that under the agreement with Peters he was to forego the payment of $1000 by Peters in consideration of Peters causing to be issued to him the shares of stock to which Peters was entitled under the agreement with his associates; and, further, that Peters in his testimony states that, while he did not pay the $1000 in money, it was agreed that in lieu thereof certain of the stock was to be delivered to Willits, the amount of which is not stated, he not being clear upon that subject. It must be conceded that these men testified in substance as claimed, and the only evidence to the contrary arises from the facts and circumstances surrounding the parties, their conduct and subsequent acts in relation to such stock claimed to have been the subject of their contract. The undisputed evidence is that as a fact Willits received only $5000 as the cash consideration for the sale. There is no dispute as to there having been executed and Willits having received a mortgage in the amount represented, and that the encumbrance existing was assumed by the purchasers without personal liability as by their agreement they were bound to do. The question, then, is, Was

there any evidence before the court justifying its finding that $5000 was the total amount which Willits was to receive for the property, in addition to the mortgages given and assumed? Considering alone the evidence of Willits, if his statements were accepted by the court to be true, Willits received an equivalent of the $1000 which Peters had agreed to pay; and upon such assumption no injury is shown to have resulted to plaintiff, for if Peters in fact received no benefit by the transaction and agreed that Willits should receive the one-third of the stock to be received by Peters in consideration of the payment of $1000, no reason suggests itself why Willits might not make a valid agreement with Peters to accept such stock in lieu of the $1000 in money, and through which agreement, if actually carried out, plaintiff and his assignor would have received all that they were entitled to receive, and even though Peters did not in strict terms carry out his agreement, he, nevertheless, paid to Willits that which he was willing to receive in lieu of the $1000. Upon the other hand, were the court to have accepted as true the statement of Peters that a part only of the stock was to be transferred, in that event Peters held the excess of what he actually agreed to transfer without consideration and in fraud of plaintiff's rights, and a finding of the amount of such excess would be necessary as establishing a basis for the judgment. The court, however, seems from its findings to have determined that the circumstances connected with the transaction were such as to cast discredit upon the statements of both Peters and Willits, and impliedly found that no stock transaction was involved as between said two last named parties. The rule that juries are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number or against a presumption or other evidence satisfying their minds (Code Civ. Proc., sec. 2061, subd. 2), applies with equal force to instances where the case is tried by the court. As said by Mr. Justice Field, speaking for the supreme court of the United States in *Quock Ting* v. *United States,* 140 U. S. 417, [35 L. Ed. 501, 11 Sup. Ct. Rep. 733] ; cited and followed in *County of Sonoma* v. *Stofen,* 125 Cal. 35, [57 Pac. 681] : 'Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that

rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his own account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statement, although there be no adverse verbal testimony adduced.' See, also, *Blankman* v. *Vallejo,* 15 Cal. 639; *People* v. *Milner,* 122 Cal. 171, [54 Pac. 833]; *People* v. *Mock Yick Gar,* 14 Cal. App. 336, [111 Pac. 1039]; *Sterling* v. *Cole,* 12 Cal. App. 93, [106 Pac. 602]. The question then presented is, Were the circumstances connected with this transaction such and was the conduct of the parties such as, under this rule, would justify the court in disregarding their positive evidence? In so far as the evidence of Peters is concerned, the court had the right to consider the allegations of his verified answer, which were totally at variance with his subsequent testimony. It possessed the right to consider, when considering the testimony of Willits, the amount and value of the stock which he claims was to be transferred to him; to consider the fact that no memorandum of any kind was entered into in relation to such transfer; that nearly a year elapsed between the time of the transfer and the time when he gave his testimony, and yet he made no effort to obtain this stock which possessed a value of $10,000. In other words, Willits was careful to see that he received the $5000 in money to be paid by Bellus, and yet was indifferent as to double the amount which he was to receive from his claimed contract with Peters. Even when he claims to have made a demand for the surrender of the stock no sufficient excuse is presented for noncompliance. The circumstances of receiving Peters' checks under the guise of a cash payment and immediately retransferring the same to Peters, all without the knowledge of the other contracting parties, might well have indicated to the trial court that the claim of an agreement to transfer the stock by Peters to

Willits was an afterthought. Certain it is that it was not present in the mind of Peters when he verified his answer, or the amendment thereto. Considering all of these circumstances and the conduct of the parties, as shown by the record, we do not feel warranted in saying that the learned trial judge made his finding complained of without any evidence in its support. There being some evidence which we think it was proper for the trial court to consider, its weight and effect is for that court to determine, and with the question of conflict we have nothing to do.

"Appellant calls attention to the fact that there was a contract offered in evidence which showed that at the time of its execution Peters held only 20,000 shares of the stock. This, however, is not material when we consider the allegations of the complaint and the admissions of the answer with reference to the amount of stock actually held by him at the time of the bringing of the action.

"Appellant also contends that, because Kemp sold his 40,000 shares originally issued to him and Bellus subsequently did the same, that, therefore, neither was in a position to recover in this action, even if the fraud be established. We do not believe that the sale of any definite number of shares of the company's stock by plaintiff and by Kemp would have that effect. If, as a matter of fact, the 40,000 shares held by Peters was their stock, they having paid the whole consideration price therefor, the mere selling of other stock in the corporation by them would not affect their right to recover as to the 40,000 shares so held by Peters. There is no issue presented by the pleadings, nor any positive evidence in the testimony, showing any merger or reissue of any stock, or a change in the relation of Peters to the gas company originally formed by himself and his associates. Nor do we believe that where the conversion of stock was admitted and its value conceded that any necessity existed for the court to order, through its judgment, the return of the stock by Peters as a condition precedent to the entry of the judgment.

"The rule invoked that plaintiff was bound by the statements of Willits, because he was a witness on behalf of plaintiff, does not go to the extent of requiring the court to believe and accept as true the statements of such witness. Nor do we see any force in the suggestion that Peters possessed rights

by virtue of a lapsed option theretofore held by him on the property. Appellant contends that the notice of rescission of the agreement given by Bellus and Kemp to Peters was ineffectual because no tender or offer was made to restore that which had been received by plaintiff and Kemp under the agreement. If, as found by the court, Peters never paid and never intended to pay any part of the consideration price for the gas plant, his possession of the shares of stock was obtained by fraud; he never acquired any interest therein, nor was he interested in the management or control thereof, or of the salaries paid to its employees. Having no interest in the property there was nothing he was entitled to receive in order to place the parties in *statu quo.* The shares of stock so held by him belonged to the parties who had paid the consideration price therefor.

''Other questions are presented, but we do not think they require specific notice, as, in our opinion, the decision of the trial court in connection therewith did not in any way prejudice the rights of appellant. Assuming the accuracy of the chief finding, which related to the amount of the consideration actually paid and agreed to be paid, the judgment was a proper one and should be affirmed.''

The foregoing opinion, prepared by Mr. Justice Allen, was filed in the district court of appeal for the second district, and thereupon the judgment of the superior court was affirmed. Afterward, in due time, on petition of the appellant, the affirmance was vacated and the cause was transferred to this court for further hearing and decision. Upon a further consideration of the record we are satisfied that the opinion of the district court fairly states the case and we approve the reasons there given for the affirmance.

The judgment and order are affirmed.

Melvin, J., Henshaw, J., and Lorigan, J., concurred.