[Civ. No. 6133. First Appellate District, Division Two.—February 14, 1928.]

FIRST NATIONAL BANK OF LONG BEACH (a Corporation), Respondent, v. CROWN TRANSFER & STORAGE CO. (a Corporation), Appellant.

[Civ. No. 6134. First Appellate District, Division Two.—February 14, 1928.]

MERCHANTS NATIONAL BANK OF LOS ANGELES (a Corporation), Respondent, v. CROWN TRANSFER & STORAGE CO. (a Corporation), Appellant.

244

A. Lincoln Rowland and Carter & Webster for Appellant.

Page, Nolan, Rohe & Hurt for Respondent.

STURTEVANT, J.—Each of these actions was commenced by the plaintiff to recover a judgment for damages. The actions were tried in the lower court sitting without a jury.

The actions were tried together and the trial court made findings in favor of each plaintiff and from judgments entered thereon the defendant has appealed in each action under section 953a of the Code of Civil Procedure. The record consists of two transcripts by the clerk, one by the reporter and one set of briefs.

The Braden Preserving Company, hereinafter called the Braden Company, operated a factory at Pasadena and stored its manufactured products in a warehouse operated by defendant at the same place. The Braden Company from time to time borrowed moneys from the plaintiffs and issued to each its promissory note. To secure the repayment of said moneys it pledged to the plaintiffs the goods so stored in defendant's warehouse. The amount of the plaintiffs' claim against the Braden Company at all times greatly exceeded the value of the goods in the warehouse. As there was considerable detail in the transactions, C. W. Clark, an employee of one of the banks, was engaged as the agent of both banks to attend to the business representing the interests of both banks. From time to time merchandise was stored, some was sold and taken out and more was received. June 1, 1922, the entire merchandise on hand was contracted to be sold at certain ports and was to be shipped on board one of the vessels anchored at the wharf of the Luckenbach Steamship Company at San Pedro. The manufacturers negotiated the sale and engaged defendant to transport the merchandise at four dollars per ton to San Pedro. The plaintiffs adopted the transaction. The manager of the Braden Company at that time was Mr. Baer. On that date Mr. Clark wrote a letter to the defendant informing it of the sale and, among other things, said: "The writer will call upon you Saturday morning and surrender the warehouse receipt held by us and the First National Bank of Long Beach, and in the meantime, kindly assist Mr. Baer in getting these goods ready for shipment."

The goods consisted of preserves, jams, jellies, etc. The goods were in cases. Some needed repacking. In some instances cases needed repairing. Some of the goods were in such condition that it was necessary to reboil them, etc. The available space to do this reconditioning, and machinery therefor, could not be had at the defendant's warehouse.

Nevertheless much of the work was done there. However, some of the goods were taken to the factory of the Braden Company for reconditioning. As the reconditioning proceeded it was learned that some of the goods were spoiled so badly that they could not be reconditioned.

Different goods were packed in different sized containers. In some instances one and the same kind of goods was packed in different sized packages or containers.

When the deliveries at the wharf of the Luckenbach Company had come to an end a reckoning was had. From that reckoning it appeared that the defendant had not made delivery of all of the goods which it had received and for which it had issued warehouse receipts. Thereupon these actions were commenced.

Finding number seven in each action finds (1) that the defendant did not deliver the goods in accordance with the plaintiff's written instructions, and (2) that plaintiff did not, in writing or otherwise, direct the defendant to deliver any of the goods to the Braden Company. The defendant asserts that the finding is not sustained by the evidence and it quotes Mr. Clark's letter. The plaintiff replies that a proper construction of the language used by Mr. Clark will not support the contention of the defendant. The plaintiff then states that, even if the contention in this behalf is not sound, nevertheless the finding was correct because the burden rested on the defendant to excuse its apparent default and it failed to support its allegations with sufficient proof. (2 Deering's General Laws, 1923, p. 3721, sec. 8.) We will concede for the purposes of this decision that Mr. Clark's letter was, among other things, an authorization for the workmen to take some of the goods to the factory of the Braden Company for the purpose of reconditioning them. However, for the protection of the good names of each party, and in the exercise of ordinary care, it would appear that a record would have been made of the goods so taken and of what became of them. But this record is wholly silent on that subject, and, as stated above, the burden was on the defendant.

If defendant would go so far as to claim that Mr. Clark's letter was an authorization for an absolute and permanent delivery to the Braden Company, we have no hesitancy in

saying the terms used in the letter do not admit of that construction. Furthermore, there were orders, in the usual form as used by the parties, issued on June 3, 1922, which covered these particular goods and which directed delivery to the Luckenbach Company. Mr. Baer was not called by either party. Mr. Braden was called. But no one was called who stated what in very short was done with the absent or missing packages.

 In presenting the point just discussed the defendant asserts that the plaintiff is estopped. In making that assertion it assumes that the record discloses that Mr. Baer misappropriated the missing goods. It does not. It falls far short of showing who got them or what became of them.

 The defendant claims that finding number nine, which fixes the damages, is not sustained by the evidence. It argues that only those damages may be allowed which are clearly ascertainable both in their nature and origin. (Civ. Code, sec. 3301.) The wrong complained of, under the undisputed findings, arose through the acts of omission and commission of the defendant. We come next to value.

 In fixing that value we are confronted with a question regarding what rule of law to follow. There are three possible rules. The defendant asserts that in arriving at the value of the one thousand cases of spoiled goods, as the character thereof was not shown, "the trial court should have eliminated the cases having the greatest value, and then those having the next greatest value, and so on down until the thousand cases were exhausted." The plaintiff says: "No. There is no authority for doing so. To do so is to presume in favor of the defendant, whereas we should presume against it. The latter rule is stated in *Armory* v. *Delamirie*, 1 Strange, 506, and has been followed in many cases. Sutherland on Damages, vol. 2, p. 1415, vol. 4, p. 4225." We may not, in this state, adopt either presumption as there is no statute to that effect. If it is claimed that an inference exists instead of a presumption, then the inference was for the jury. (*Davis* v. *Hearst*, 160 Cal. 143 [116 Pac. 530].) The trial court followed neither method. It followed the rule delineated in *Hobbs* v. *Monarch Refrigerating Co.*, 277 Ill. 326 [Ann. Cas. 1918B, 743, L. R. A.

1917D, 847, 115 N. E. 534]. At page 536 the court said: "Counsel for plaintiff in error also argue that the court erred in reckoning the amount which it was decreed should be paid per pound for the damaged poultry sold. In an action to recover the proportionate share of the property or goods confused by another, it is not necessary to identify the exact article or the exact property formerly owned. The proof tends to show that plaintiff in error could have separated the damaged goods of defendant in error from the other goods injured and thereafter sold as salvage. Not having done so, it is clear that under the authorities it was properly held liable by the decree for the average price received in the sale of such goods. 8 Cyc. 576; *First Nat. Bank of Elgin* v. *Schween*, 127 Ill. 573 [11 Am. St. Rep. 174, 20 N. E. 681]; 5 R. C. L. 1052. The burden of establishing the number of pounds of salvage sold by plaintiff in error belonging to defendant in error, and the prices received therefor, was upon plaintiff in error. Having failed to make this proof, it cannot now be heard to complain because it is required to pay the average price for which such damaged goods sold." If it be conceded that the rule as stated is sound, we do not understand the defendant contends that the trial court erred in applying it; but its contention is that the trial court should have applied a different rule. We think the trial court did not err.

 The defendant contends that the trial court should not have allowed interest on the plaintiffs' demand before the date of the judgment and it cites Civil Code, section 3287; *Williams* v. *Flinn & Treacy*, 61 Cal. App. 352 [214 Pac. 1024]; *American-Hawaiian etc. Co.* v. *Butler*, 17 Cal. App. 764, 768 [121 Pac. 709]; *Cox* v. *McLaughlin*, 76 Cal. 60, 71 [9 Am. St. Rep. 164, 18 Pac. 100]. The plaintiff contends that it sued in conversion and that the interest was properly allowed from the date of the demand made on the defendant. (Civ. Code, sec. 3336.) The complaint was quite multifarious, but no demurrer was interposed. After a careful examination we think it must be conceded that, among other things, it stated a cause of action as for conversion. It stated facts showing that the plaintiff held a special title to, and an immediate right to the possession of, the goods described in the complaint, and thereupon it fol-

lowed with an allegation that the plaintiff made a demand for the return to it of the goods and that the defendant had refused to comply with the demand. These facts constituted a conversion of the plaintiff's property. ■ The law fixing the measure of damages in an action for conversion is section 3336 of the Civil Code. By the terms of that section the defendant was liable for interest from the date of conversion. Under the facts pleaded the conversion took place when the defendant refused to comply with plaintiff's demand.

■ In its complaint the plaintiff alleged that on the 3d day of June, 1922, it directed the defendant to deliver the goods to the Luckenbach Steamship Company at San Pedro. As is stated above, the defendant's warehouse was at Pasadena. Under its contract as warehouseman the defendant was under no duty to make deliveries at San Pedro. However, the plaintiff also pleaded that it demanded the return of the goods to the plaintiff and that the defendant failed and refused to comply with that demand. The demand last mentioned is not denied by the answer. That demand and the defendant's refusal constituted the default of the defendant. ■ But the date of that demand is not alleged. The complaint was filed April 30, 1923. The demand was at least as early as April 30, 1923. The judgment awarded interest from June 3, 1922. That was an excessive allowance.

The judgment in each case is modified by deducting therefrom interest from June 3, 1922, to April 30, 1923, and as so modified it is affirmed, and the respondents will recover their costs on appeal.

Koford, P. J., and Nourse, J., concurred.