[Civ. No. 11430. Second Appellate District, Division One.—June 3, 1938.]

CHRISTINE FITZPATRICK, Respondent, v. THELMA CLARK, Appellant.

Eugene Kelly for Appellant.

William M. Rains and Albert L. Denney for Respondent.

YORK, P. J.—The respondent brought this action against appellant alleging that the latter had alienated the affections of respondent's husband. The case was tried before a jury which returned a verdict in favor of respondent for $30,000. Judgment was duly entered upon such verdict and thereafter an order was made granting a motion for new trial unless the respondent filed a remission of $7,500 of said judgment. Such remission was made and the judgment reduced to the sum of $22,500, whereupon the order of the court denying the motion for a new trial was filed and entered.

Special interrogatories submitted to the jury were answered as follows: "Special interrogatory No. 1. If your verdict is for the plaintiff in this action then, and only in that event, I instruct you to answer the following question: (1) Do you find that plaintiff is entitled to exemplary damages? Answer: Yes. (2) If your answer to the foregoing question is 'Yes', then what amount, if any, have you allowed in your general verdict as exemplary damages? Answer: $15,-000.00. . . .

"Special interrogatory No. 2. If your verdict is for the plaintiff then, and only in that event, I instruct you to answer the following question: (1) In her conduct with Michael W. Fitzpatrick was Thelma Clark guilty of malice toward plaintiff? Answer: Yes."

Appellant here urges that "it was error for the court to instruct the jury that it could award punitive damages if it found that defendant acted with malice and then define malice in two succeeding contradictory instructions, the first of which was a definition of malice in fact and the second a

definition of malice in law''. Appellant also contends that ''the judgment of $11,250 punitive damages is not supported by any substantial evidence and, in any event, is excessive'', and that ''the verdict for $22,500 is excessive''.

The instructions which appellant claims were contradictory and the giving of which prejudicially affected her substantial rights are as follows:

(1) The instruction referred to by appellant as ''defendant's No. 22'' which was given at the request of appellant: ''I instruct you that malice, as used in these instructions, means not only anger, hatred and revenge, but every other unlawful and unjustifiable motive. The words 'malice' and 'maliciously' import a wish to vex, annoy or injure another person which may be established either by direct proof or presumption of law. Of course, the phrase 'direct proof' as here used, means both testimony of eye witnesses and circumstantial evidence, that is, it means either or both of them.''

(2) The instruction referred to by appellant as ''plaintiff's No. A'' which was given at the request of respondent: ''Malice in its legal sense, means an intentional doing of a wrongful act toward another without legal justification or excuse or, in other words, the unlawful violation of a known right.''

Appellant claims that instruction No. 22 is a definition of malice in fact, while instruction No. A is a definition of malice in law; that they are contradictory and in effect presented two entirely different theories of malice to the jury; and that while instruction No. A will support compensatory damages only, it was one of two contradictory definitions of malice upon which the jury was required to deliberate in awarding punitive damages.

As defined by section 7, subdivision 4, of the Penal Code: ''The words 'malice' and 'maliciously' import a wish to vex, annoy or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.'' This definition is included in appellant's instruction No. 22, and in referring to such definition, the court in the case of *Davis* v. *Hearst*, 160 Cal. 143 at 160 [116 Pac. 530], said: '' . . . we shall for the purposes of this discussion define malice as it is defined by section 7 of the Penal Code,—a state of mind arising from hatred or ill-will, evidencing a willingness to vex, annoy, or injure another person. We shall call this

'malice' malice in fact. We shall bear in mind that it may be established either by direct proof of the state of mind of the person, or by indirect evidence so satisfying to the jury that they may from it infer and find the existence of this malice in fact.

"We shall define malice in law as being that malice which the law presumes (either conclusively or disputably) to exist upon the production of certain designated evidence, which malice may be fictional and constructive merely, and which, arising, as it usually does, from what is conceived to be the necessity of proof following a pleading, which in turn follows a definition, is to be always distinguished from true malice or malice in fact."

In *Ross* v. *Sweeters*, 119 Cal. App. 716 at 724 [7 Pac. (2d) 334], it is stated: " . . . what is known as malice in fact, as distinguished from malice in law, must exist before punitive or exemplary damages can be given."

█ The right to recover punitive damages arises solely by virtue of section 3294 of the Civil Code, to wit: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

Appellant recites in her brief five instructions, including the two above quoted, which she claims allowed the jury to find malice and hence punitive damages, without ever finding that appellant had any evil intent toward the respondent. However, appellant apparently overlooked the following instruction bearing upon the subject of malice and improper motives, which was given to the jury at her own request, to wit:

"In an action of this kind a material point of inquiry is the intent with which the defendant has acted. It must appear that the defendant has acted from improper motives. A charge of alienating the affections of a husband from his wife is not sustained if it appears that before the defendant acted at all the husband entertained no affection for his wife, and that his actions toward her were the result of his own sentiments instead of being caused by any persuasion or inducement of the defendant. Unless you find that the defendant, Thelma Clark, acted from improper motives, your verdict

must be for the defendant. If you find that before defendant acted at all plaintiff's husband, Michael W. Fitzpatrick, entertained no affection for his wife, and that his actions toward her were the result of his own sentiments instead of being caused by any persuasion or inducement made to him by Thelma Clark, then you must find for the defendant.''

It is apparent from a perusal of all the instructions which were given that the jury was fully informed upon all the various phases of the case including malice in fact, as defined by section 7 of the Penal Code, improper motives, evil intent, wrongful acts and unlawful influence, all of which were necessary elements to a recovery by respondent in an action of this character. Taking into consideration all of the facts and circumstances presented by the instant action, this court cannot say that the jury was misled by respondent's instruction No. A, or that it would have arrived at a different verdict had the very broad and general definition of malice in law, as outlined in instruction No. A, not been given. If any error attached to the giving of that instruction to the jury, it was entirely harmless and insufficient to have prejudicially affected appellant's rights.

█ The evidence supports the jury's verdict for punitive damages. The award for punitive and compensatory damages reduced by the trial court, as hereinbefore set out, is not so excessive as to shock the sense of justice and raise the presumption that it was the result of passion and prejudice on the part of the jury.

The judgment is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 1, 1938, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 1, 1938. Curtis, J., and Edmonds, J., voted for a hearing.