[L. A. No. 17916.   In Bank.—Oct. 1, 1941.]

C. F. HAIGLER et al., Respondents, v. DOTTIE DELPHY
DONNELLY et al., Appellants.

676

Henry S. Cohen and Bernard B. Cohen for Appellants.

W. W. Comstock and H. A. Finkenstein for Respondents.

TRAYNOR, J.—Plaintiffs owned a furnished apartment house in Los Angeles. In March, 1939, they listed the house and furniture with defendant, a licensed real estate broker, the house to be leased at $250 per month, the furniture to be sold for $3,000 cash, such amounts to be *net* to plaintiffs. A listing card setting forth these terms was signed by plaintiffs and left in the possession of defendant. In April, 1939, plaintiffs gave to defendant another listing which authorized the sale of the apartment house and furniture for the lump sum of $27,000 with a five per cent commission to defendant. Thereafter, through defendant's offices Anna M. Silva agreed to lease the apartment house for a term of ten years at $250 per month and to buy the furniture for $2500. Defendant communicated the terms to plaintiffs who accepted them and executed a written contract with Mrs. Silva on May 11, 1939. Mrs. Silva paid $3500 to defendant, $2500 representing the price of the furniture and $1,000 representing payment on account of the lease. From the total sum defendant retained $1,150, which she claimed as commission, and tendered to plaintiffs a check for $2,258.35, the balance of the amount paid less prorated rents in the sum of $91.65. Plaintiffs demanded the full amount of $3408.35 and on being refused undertook the present action. Prior to the filing of

the complaint, plaintiffs accepted the check for $2,258.35 under a stipulation that it could be cashed without prejudice to the rights of either party.

The complaint sets forth two causes of action. The first is for money had and received. The second, after incorporating the allegation of a demand contained in the first cause of action, alleges that defendant, as agent for plaintiffs, maliciously and fraudulently refused to account to plaintiffs for money belonging to plaintiffs which defendant had collected on their account. Then follows a prayer for actual damages in the sum of $3408.35 and for exemplary damages in the sum of $3,000. The trial court found that defendant was not entitled to retain as commission the sum withheld by her and gave judgment for $3408.35 plus $500 as exemplary damages to plaintiffs. From this judgment, defendant has appealed.

Plaintiffs contend that under the original net listing defendant was entitled to receive for her services only such amounts as she secured in excess of the net prices specified. Defendant contends that the original net listing was cancelled and the listing card destroyed by her at the instance of plaintiffs at the time of the second listing. Since the lease and sale to Mrs. Silva were not within the terms of the second listing, which contemplated a lump sum sale of both building and furniture, defendant bases her alleged right to a commission upon the theory of an implied contract to pay the reasonable value of her services. She also claims a commission on the basis of an oral contract assertedly entered into between her and plaintiffs shortly before the deal with Mrs. Silva was closed.

■ Defendant challenges the sufficiency of the findings, citing in particular the failure of the trial court to find whether or not she was entitled to the reasonable value of her services. Following the language of the pleadings, the trial court found that defendant, while acting as agent for plaintiffs, received the sum of $3408.35 belonging to them for which she did not account. This finding of ultimate fact includes by necessary implication a finding that the transaction was consummated under the original net listing and that defendant therefore was not entitled to the reasonable value of her services. ■ There is no error in the failure of the

trial court to make an express finding upon an issue if it is implicit in the findings made, and there is no necessity expressly to negate contradictory allegations. (See cases cited in 24 Cal. Jur. 974, 976.)

■ If a broker's contract for the sale or lease of property fixes a net amount to be paid the owner, the broker's compensation is limited to the excess of the payment by the purchaser over the net amount specified. If he fails to sell or lease for more than the amount named, the broker is entitled to no compensation. (*Ford* v. *Brown*, 120 Cal. 551 [52 Pac. 817]; *Sill* v. *Ceschi*, 167 Cal. 698 [140 Pac. 949]; *Church* v. *Dunham*, 14 Ida. 776 [96 Pac. 203]; *Burnett* v. *Potts*, 236 Ill. 499 [86 N. E. 258]; *Culbertson* v. *Sheridan*, 93 Kan. 268 [144 Pac. 268]; *Futrell* v. *Reeves*, 165 Ky. 282 [176 S. W. 1151]; *Gilmore* v. *Bolio*, 165 Mich. 633 [131 N. W. 105, 34 L. R. A. (N. S.) 1050]; *Beatty* v. *Russell*, 41 Neb. 321 [59 N. W. 919]; *Wolverton* v. *Tuttle*, 51 Ore. 501 [94 Pac. 961]; 9 C. J. 581, 582.) ■ Therefore, if there is substantial evidence to support the implied finding of the trial court that the sale and lease to Mrs. Silva were negotiated 'under the original net listing, defendant is not entitled to a commission.

An examination of the record reveals ample evidence to support the finding. At the trial, plaintiff Haigler testified that during the negotiations with Mrs. Silva nothing was said concerning a commission and that it was his understanding with defendant that the lease and sale would be governed by the original net listing. He denied authorizing the cancellation of the original agreement and the destruction of the card or making an oral contract to pay defendant a commission. He testified that Mrs. Brown, a saleswoman in the employ of defendant, produced the listing card when the deal was closed but that defendant refused to show it to him. This testimony was corroborated by Mrs. Silva and her husband, who were present at the time. Mrs. Brown also testified that the listing card was present at the time of the closing of the deal with Mrs. Silva and had in fact been used by defendant in negotiating the transaction.

In support of her claim, defendant introduced in evidence a typewritten receipt admittedly signed by Mr. Haigler which read: "RECEIVED FROM DONNELLY & COMPANY the sum of Twenty-five hundred Dollars, above mentioned, Less

10% commission earned." Both Mr. and Mrs. Haigler testified that the words "Less 10% commission earned" were not on the receipt at the time Mr. Haigler signed the writing. Mr. Sellers, a handwriting expert, testified that in his opinion these words were typed at a different time and under different conditions from the typewriting preceding them. Mr. and Mrs. Silva testified that defendant had said to them at different times that "she could do anything with them [plaintiffs] because they were dumb," and several witnesses testified that the reputation of defendant for truth and honesty was bad.

In further support of an alleged agreement to pay her a commission, defendant refers to a provision in the contract signed by plaintiffs with Mrs. Silva which reads: "It is hereby agreed that so much of said down payment, or any other money collected by Donnelly & Co., as is necessary shall be retained by Donnelly & Co., to pay the seller's commission and the balance if any, after said payment, shall be paid by said Donnelly & Co., to said party of the first part or held by agent subject to first parties order." This provision is not an agreement to pay a commission but simply an authorization to retain commissions that may be due.

Defendant finally urges that plaintiffs, in consenting to a lease and sale under terms different from those set forth in the net listing, waived the conditions therein for the payment of the commission and thereby became liable under an implied contract to pay the reasonable value of the services rendered by defendant in finding a purchaser. This contention is unsound. The parties were not prevented by the terms of the agreement from negotiating a sale at a reduced net price. Plaintiff's consent to a $500 reduction of the price of the furniture did not extinguish the agreement. Defendant has erroneously sought to invoke a rule applicable to a broker who undertakes to sell property under an agreement whereby he is to receive as commission a certain percentage of the sale price obtained. In such a case a seller cannot defeat the right of a broker to his commission by consummating a sale with the purchaser at a smaller price than that originally proposed. (*Boland* v. *Ashurst Oil etc. Co.*, 145 Cal. 405 [78 Pac. 871] ; *Wetzell* v. *Wagoner*, 41 Mo. App. 509 ; cases cited in 9 C. J. 600, 601.) These cases also recognize, however, that the broker is not entitled to any recovery

if his right to a commission is conditional on a sale at the price mentioned in his authorization (see cases cited in 9 C. J. 602). A broker under a net contract is entitled to no compensation unless he successfully negotiates a sale for more than the net amount. It would be absurd to hold that defendant may recover a commission on concluding a sale for $2500 when none would be due her had she found a purchaser for $3,000.

■ The question remains whether the award of exemplary damages is proper. The right to recover punitive or exemplary damages is created by section 3294 of the Civil Code which provides that ''In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.'' (See *Fitzpatrick* v. *Clark*, 26 Cal. App. (2d) 710 [80 Pac. (2d) 183].) Under this section exemplary damages may not be recovered in an action based upon a contractual obligation even though the breach of contract is wilful or malicious. (*Berning* v. *Colodny & Colodny*, 103 Cal. App. 188 [284 Pac. 496]; *Baumgarten* v. *Alliance Assurance Co.*, 159 Fed. 275; see 8 Cal. Jur. 872.) If on the other hand the action is one in tort, exemplary damages may be recovered upon a proper showing of malice, fraud or oppression even though the tort incidentally involves a breach of contract. (*Gorman* v. *Southern Pac. Co.*, 97 Cal. 1 [31 Pac. 1112, 33 Am. St. Rep. 157]; *Lyles* v. *Perrin*, 119 Cal. 264 [51 Pac. 332]; *Jones* v. *Kelly*, 208 Cal. 251 [280 Pac. 942]; *Berning* v. *Colodny, supra*.)

The first cause of action set forth by plaintiff is one for money had and received. Since it is established in California that an action for money had and received is *ex contractu* in nature, being founded upon a promise implied in law (*Philpott* v. *Superior Court*, 1 Cal. (2d) 512 [36 Pac. (2d) 635, 95 A. L. R. 990]; *McCall* v. *Superior Court*, 1 Cal. (2d) 527 [36 Pac. (2d) 642, 95 A. L. R. 1019]; *Los Angeles Drug Co.* v. *Superior Court*, 8 Cal. (2d) 71 [63 Pac. (2d) 1124]; see *Fordson Coal Co.* v. *Kentucky River Coal Corporation*, 69 Fed. (2d) 131) there is a question whether exemplary damages can be recovered in such an action.

█ The second cause of action set forth by plaintiffs, however, contains the essential elements of an action for conversion and is therefore *ex delicto* in nature. Exemplary damages are properly awardable in an action for conversion, given the required showing of malice, fraud or oppression. (*Arzaga* v. *Villalba,* 85 Cal. 191 [24 Pac. 656]; *Gilbert* v. *Peck,* 162 Cal. 54 [121 Pac. 315, Ann. Cas. 1913C, 1349].)

█ This count in brief alleges that defendant, while acting as agent for plaintiffs, received a stipulated sum of money belonging to plaintiffs and refused to account for it after a proper demand. Defendant contends that a conversion of the money is not sufficiently alleged. The more recent cases, however, indicate that a complaint charging defendant with exercising dominion over property inconsistent with the ownership of plaintiff sets forth a good cause of action for conversion where no special demurrer for uncertainty is interposed. (*Faulkner* v. *First National Bank,* 130 Cal. 258 [62 Pac. 463]; *Dieterle* v. *Bekin,* 143 Cal. 683 [77 Pac. 664]; *Gustafson* v. *Byers,* 105 Cal. App. 584 [288 Pac. 111]; *First National Bank of Long Beach* v. *Crown T. & S. Co.,* 89 Cal. App. 243 [264 Pac. 534].)

█ A broker or agent is ordinarily liable for converting the funds of his principal when he refuses to account for them upon proper demand. (*Wood* v. *Blaney,* 107 Cal. 291 [40 Pac. 428]; *Bellus* v. *Peters,* 165 Cal. 112 [130 Pac. 1186]; *Stacy* v. *Browne,* 99 Okla. 104 [219 Pac. 336]; *Jones* v. *Smith,* 65 Misc. 528 [120 N. Y. Supp. 865]; see 3 C. J. S. 19.)

█ While it is true that money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved (*Baxter* v. *King,* 81 Cal. App. 192 [253 Pac. 172]), it is not necessary that each coin or bill be earmarked. When an agent is required to turn over to his principal a definite sum received by him on his principal's account, the remedy of conversion is proper. (*Salem Light & Traction Co.* v. *Anson,* 41 Ore. 562 [67 Pac. 1015, 69 Pac. 675].)

█ The trial court found in accordance with the allegations set forth in the second cause of action. The evidence is sufficient to show a conversion and to justify the court in concluding that defendant's refusal to account for the sum withheld by her was not made in good faith under an honest belief that she was entitled thereto, but was the re-

sult of a fraudulent scheme to secure plaintiffs' money by means of trickery and deliberate falsehood. Such action constitutes "oppression, fraud, or malice" within the meaning of section 3294 of the Civil Code.

Defendant complains that the judgment is erroneous in awarding plaintiffs the full amount of $3408.35, whereas in fact $2258.35 of such sum\ was paid to plaintiffs before the trial. Any supposed error in the judgment in this respect is in no way prejudicial to defendant. She makes no contention that she will be subjected to double payment, and such a possibility is precluded by the recital on the margin of the judgment acknowledging a partial satisfaction of the judgment in the sum of $2258.35.

The judgment is affirmed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., and Pullen, J., *pro tem.*, concurred.

Appellant's petition for a rehearing was denied October 30, 1941.]