958 F.2d 377
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GATX LEASING CORPORATION, a Delaware corporation, Plaintiff-Appellee,
v.
FIRST SECURITY LEASING CORPORATION, a Utah corporation;
First Security Bank of Utah, N.A., a national association;
First Security Bank of Idaho, N.A., a national association;
First Security Leasing Company of NEVADA, a Nevada
corporation, Defendants-Appellants.
 No. 90-16281.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1991.
Decided March 16, 1992.
 
 Before POOLE, REINHARDT and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 INTRODUCTION
 
 2
 First Security Leasing Corporation and its affiliates (First Security) appeal the district court's grant of summary judgment in favor of GATX Leasing Corporation (GATX) in a breach of contract action. First Security contends that the district court erred in interpreting a clause of a contract which specified the conditions under which GATX was entitled to certain payments. We affirm.[1]
 
 DISCUSSION
 
 3
 We review de novo the district court's grant of summary judgment. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d. 664 (1990). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). Moreover, our review is not limited to a consideration of the grounds upon which the district court decided the issues; we must affirm the district court on any grounds supported by the record before the district court at the time of the ruling. Jewel Cos. v. Pay Less Drug Stores Northwest, Inc., 741 F.2d 1555, 1564-65 (9th Cir.1984).
 
 
 4
 The contract at issue in this dispute is a Letter Agreement executed by First Security and GATX's predecessor in interest, ITEL Leasing Corporation (ITEL). In 1972, ITEL brokered a leveraged lease transaction whereby an oil tanker was chartered to Western Transnav (Western) by BanCal acting as trustee for numerous bondholders and ITEL, which retained a beneficial interest (the Charter). Then, by the Letter Agreement, ITEL sold its equity in the tanker to First Security. The Letter Agreement also provided that First Security was to pay ITEL a fee for its brokering services. GATX then purchased ITEL's rights under the Letter Agreement as part of a larger purchase of ITEL's equipment leasing portfolio. The Letter Agreement broke the fee into two payments, an initial payment made when the tanker was chartered by Western, and a residual payment. The conditions under which payment of the residual fee became due are disputed by the parties. First Security argues that the terms of the Letter Agreement required two events to occur before GATX could demand the balance of the fee. Pursuant to p 4.2(c) of the Letter Agreement, First Security would be obligated to GATX if (1) Western voluntarily terminated the Charter because the tanker was obsolete, and (2) Western paid First Security the Stipulated Loss Value.
 
 
 5
 1. Early Termination of Charter.
 
 
 6
 Both parties concede that the Charter was terminated two days after the sale of First Security's equity to the Chevron Transportation Company (CTC) when CTC resold the tanker free and clear of the Charter and the debt, and that this occurred before the Charter's expiration date. First Security contends that since it had no interest in the leveraged lease once it sold its interest to CTC, GATX could not require it to pay the residual broker's fee. However, First Security did not assign its interests under the Letter Agreement, and CTC did not assume First Security's obligations thereunder.
 
 
 7
 While it could be argued that the Letter Agreement implied a condition of ownership in order for the fee term to remain binding, implying such a condition would render First Security's fee obligations illusory because an ownership condition would place the payment or nonpayment of GATX's residual fee exclusively in First Security's hands. See Restatement (Second) of Contracts § 77 (1979). If First Security retained its interest in the tanker until Western terminated the Charter, First Security would owe GATX its residual fee. But if First Security sold its interest--as it did--before Western terminated the Charter, First Security would not owe GATX a fee regardless of what First Security received upon that sale. When there is a reasonable alternative, we will not construe a contract to be illusory. J.C. Millet Co. v. Distillers Distributing Corp., 258 F.2d 139, 142 (9th Cir.1958) (applying California law). See also Cal.Code Civ. § 1643. Thus, we do not interpret the Letter Agreement as implying that condition. Rather, First Security remained liable to GATX for the fee if the Charter was terminated early and the Stipulated Loss Value was paid, regardless of whether First Security still owned the tanker. Only a failure of those conditions or a mutual rescission of the Letter Agreement could discharge this obligation.
 
 
 8
 2. Payment of the Stipulated Loss Value.
 
 
 9
 Under the terms of the Charter, Western was required to pay BanCal as trustee for First Security and the Bondholders an agreed-upon amount, the Stipulated Loss Value, upon early termination of the Charter. Both parties agree that the tanker was sold to CTC for less than its Stipulated Loss Value.[2] Therefore, it is clear that First Security would never receive the Stipulated Loss Value itself, nor would it ever receive an amount equal to the Stipulated Loss Value. First Security argues that the terms of conditions precedent must be strictly construed, and that absent a showing of bad faith an owner is not liable to a broker if the owner sells its property at a price lower than that contemplated by the broker's agreement. Cline v. Yamaga, 97 Cal.App.3d 239, 247, 158 Cal.Rptr. 598 (1979). See also Haigler v. Donnelly, 18 Cal.2d 674, 680, 117 P.2d 331 (1941) (A broker under a net sales contract is not entitled to compensation unless he successfully negotiates a sale for more than the net amount). However, the court in Cline never considered whether the condition precedent had been waived by the sale at a lower price. It reversed the trial court's grant of summary judgment against the broker on the ground that it was disputed whether there was substantial compliance with the condition precedent. Id. at 248. In this case, GATX does not argue that there has been "substantial compliance" with the condition precedent. All agree that the condition precedent--payment of the Stipulated Loss Value--did not occur. The issue is whether it has been waived.
 
 
 10
 "One who voluntarily prevents the performance of some act upon which an obligation depends will be precluded from setting up such nonperformance as a defense." Carl v. Eade, 81 Cal.App. 356, 358, 253 P. 750 (1927). Had First Security sold the tanker directly to Western for an amount less than the Stipulated Loss Value, then First Security would have prevented that condition precedent from occurring, the condition would have been excused, and its obligation under the Letter Agreement would have been due. See, e.g., Carl v. Eade, 81 Cal.App. at 359 (defendant's acceptance of a quitclaim deed from insolvent purchaser in lieu of balance of purchase price owed excused condition that broker's commission be paid from proceeds of sale).
 
 
 11
 The cases cited by First Security, Haigler v. Donnelly, 18 Cal.2d at 679, and Connell Leasing v. J.F. Equities Acquisition, Inc., 731 F.Supp. 1539 (S.D.Fla.1990), fail to rebut this proposition. In Haigler, the sellers sold their property below the amount listed in the broker's net sales agreement. The broker argued that an implied in fact contract was created by the sale at a lower price. The Court found that the sellers had not waived the terms of the broker's agreement by selling at the lower price, and since those terms were not met, no commission was due. In this case, unlike the sellers in Haigler, First Security had an enforceable right to demand the Stipulated Loss Value from Western, and, under the terms of the Letter Agreement, an obligation to GATX to receive the Stipulated Loss Value. Its sale to CTC acted as a waiver of its right to receive that value itself. In Haigler, the sellers had no preexisting right to receive a particular value from any purchaser.
 
 
 12
 Along the same lines is Connell Leasing, 731 F.Supp. 1539. There is no indication in Connell that anyone was required to purchase the aircraft at or above the threshold amount listed in the fee agreement. Instead, the fee agreement keyed on the sale of the lessor's own interest, and then only if that interest ever sold for more than a stipulated amount. Thus, like the plaintiff in Haigler, Connell's fee was entirely contingent and when the lessor's interest was sold for less than the threshold amount, the fee did not become due. In this case, on the other hand, First Security had a contractual right to the Stipulated Loss Value, but it accepted a lesser amount from CTC. Moreover, First Security had a continuing obligation to pay a commission to GATX once the Stipulated Loss Value was paid by Western. It could not unilaterally waive that obligation by disabling itself from enforcing Western's duties.
 
 
 13
 However, First Security sold its interest in the tanker to CTC, not Western, and if the condition of actual payment of the Stipulated Loss Value was directly waived by anyone, it was waived by CTC, not First Security. Whether CTC's waiver of the Stipulated Loss Value provision can trigger First Security's duty to pay a fee to GATX must also be determined.
 
 
 14
 First Security argues that this was an arms-length transaction between CTC and First Security. In that regard neither party contends and the district court did not find that First Security colluded with CTC to avoid First Security's obligations under the Letter Agreement.[3] Thus, at first blush it may seem that the fact that CTC did not demand payment of the Stipulated Loss Value from Western cannot now be a triggering event because First Security did not itself prevent the payment of the Stipulated Loss Value from occurring. Cf. Carl v. Eade, 81 Cal.App. 356.
 
 
 15
 Nevertheless, reaching that result in this case would exalt form over substance. First Security's sale to CTC was most likely a step transaction.[4] No party anticipated that CTC would exercise its right to require Western to continue the Charter to its full term or pay the Stipulated Loss Value for early termination. The very purpose of the acquisition by CTC was to eliminate Western's obligations under the Charter, not merely to install a new equitable owner. Indeed, CTC sold the tanker free and clear of the Charter and the outstanding debt two days after the sale with First Security closed. Given that, it is not at all surprising that CTC paid First Security an amount just slightly less than the Stipulated Loss Value when it purchased First Security's interest.[5]
 
 
 16
 Even assuming that First Security was not a part of, or privy to, the structuring of the CTC-Western transaction, the evidence before the district court did not indicate that Western would not or could not pay the Stipulated Loss Value if it wished to terminate the Charter. In fact, had it terminated and not paid, recovery could have been sought from Standard Oil of California, the guarantor of Western's obligations. Therefore, as a practical matter all conditions occurred or were waived. That is, the Charter was terminated and the Stipulated Loss Value could have been paid. First Security's only objection can be that the Stipulated Loss Value was not paid to it. That is not any concern of GATX. The reason the Stipulated Loss Value was not paid to First Security was that First Security had assigned its right to receive it to someone else. In that sense, First Security simply waived the right to get that payment, and did so regardless of whether it received less, more, or the same amount from sale proceeds when it transferred its interest in the Charter. Thus, even if it owed nothing to GATX upon making the sale to CTC, it did owe the fee once the Charter was voluntarily terminated.
 
 CONCLUSION
 
 17
 First Security and GATX had a contract which obligated First Security to pay GATX a fee if a charter with Western terminated and the Stipulated Loss Value was paid. The Charter was terminated, but the Stipulated Loss Value was not paid because payment was waived. The district court held that the waiver could not release First Security from its obligation to GATX. We agree.
 
 
 18
 AFFIRMED.
 
 
 19
 REINHARDT, Circuit Judge, dissenting.
 
 
 20
 I respectfully dissent. Section 4.2(c) of the Letter Agreement expressly states that the payment of the fee described in that section is contingent on the payment of the stipulated loss value upon the termination of the charter. First Security did not own the tanker when the charter was terminated, nor did it receive payment of the stipulated loss value upon the charter's termination. The majority nevertheless concludes that the district court's grant of summary judgment against First Security was appropriate because a literal interpretation of the Letter Agreement would permit First Security to avoid its fee obligation by selling the tanker or by waiving its right to receive the stipulated loss value, thus rendering the contract "illusory."
 
 
 21
 Neither party contends--and the district court did not find--that First Security engaged in a "step transaction" designed to avoid First Security's obligations under the Letter Agreement. We therefore must assume for purposes of this appeal that First Security's actions were motivated by legitimate reasons unrelated to its fee obligation to GATX. There was no express agreement which prohibited First Security from selling the tanker or waiving its right to receive the stipulated loss value. Nor does GATX identify any extrinsic evidence which indicates that the contract was understood by the parties to preclude any such action, or that First Security's fee obligation was understood to persist despite such events.
 
 
 22
 Although the majority's interpretation of the contract is plausible, it is by no means the only rational interpretation of the Letter Agreement. It is conceivable that although the contract permitted First Security to eliminate its obligation to pay the particular fee at issue here, extrinsic economic or other considerations would have made such an action by First Security unlikely. In any event, GATX may have been willing to bear the risk of the possible negation of that fee obligation for additional consideration that is found in the Letter Agreement or because the other benefits GATX received under the contract made the assumption of that risk worthwhile. In the absence of any evidence concerning industry practice regarding these types of contracts or the parties' understanding as to the certainty that GATX (or its predecessor) would receive the particular fee, I cannot agree that my colleagues' interpretation of the contract is the only permissible one. Because it is conceivable that the parties agreed that First Security's fee obligation would not exist if it did not own the tanker upon termination of the charter or if it waived its right to payment of the stipulated loss value, an interpretation of the Letter Agreement which recognized such an understanding would not make the contract "illusory"; instead, it would actuate the intent of the parties.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Since we affirm the district court's summary judgment, we need not decide the propriety of the district court's protective order regarding two privileged memoranda inadvertently disclosed by GATX's counsel
 
 
 [2]
 First Security asserts that the Stipulated Loss Value at the time the Charter was terminated was $30,293,532.75 and that the tanker was sold to CTC for $29,978,110.06. GATX claims the tanker was sold for $7.1 million to CTC, and that First Security improperly included the $22,978,110.06 in debt assumed by CTC in the purchase price. The district court correctly found that since the boat was not sold for the Stipulated Loss Value, the dispute over the actual sales price was not material
 
 
 [3]
 Since the district court granted GATX summary judgment on its breach of contract claim, it did not reach the issue of good faith and that issue is not before us on appeal
 
 
 [4]
 The district court did not hold that this was true, but it appears to have assumed it by using "Western" and "Chevron," or CTC, virtually interchangeably. With regard to this transaction, the parties also treated the entities as one and the same. See Deposition of C. Cummings at 58; Deposition of J. Leutwyler at 16
 
 
 [5]
 The difference was a little over one percent