[Civ. No. 22613.   Second Dist., Div. Two.   Oct. 28, 1957.]

DEBEE K. SHAHOOD, Respondent, v. GILBERT CAVIN,
Appellant.

Paul D. Strader, Jr., for Appellant.

Robert C. Pannell for Respondent.

ASHBURN, J.—Appeal from judgment for plaintiff for $3,410.15 and costs. Appellant's first point is that the court erred in overruling a demurrer to the first amended complaint. Appellant argues that that complaint, labeled conversion, does not state a cause of action because the subject matter is money and mere money is not susceptible of conversion. We agree that the complaint does not allege a conversion but hold that the demurrer was properly overruled, disregarding in the process the faulty conclusion of the pleader.

The complaint in summary alleges the following. Plaintiff Debee K. Shahood is and was the owner of real property known as 2802 Winlock Road, in the city of Torrance. She gave a written power of attorney to her son, George N. Shahood, authorizing him to manage or sell the property for plaintiff's benefit. He conveyed it to defendant Cavin on January 9, 1955, as security for a personal loan of $1,500, defendant agreeing to reconvey upon repayment of the loan within six months. Defendant knew at all times that the loan was not to be used for the benefit of plaintiff or her property, and that the son George had no authority to convey except for the benefit of plaintiff. Thereafter, on May 1, 1955, George and Cavin made a superseding agreement to the effect that Cavin should sell the property to John Ard, deduct the amount of his loan from the proceeds and pay over the balance to George or Debee Shahood; the property was sold and conveyed to Ard for $11,200. Plaintiff had never authorized any sale or conveyance other than one for her own personal benefit and therefore the conveyances to Cavin and to Ard were unlawful; ''[h]owever, Debee Shahood herewith ratifies the sale to the Ards.'' Cavin withholds the proceeds of the Ard sale from plaintiff ''and has converted them to his own use and benefit, all to plaintiff's damage in the amount of $11,200.00''; defendant has acted maliciously and plaintiff is entitled to exemplary damages; ''[p]laintiff is entitled to immediate possession of the sale proceeds and has demanded them but defendants have refused to surrender possession of such proceeds.''

Appellant cites *Haigler* v. *Donnelly,* 18 Cal.2d 674 [117 P.2d 331] and *Olschewski* v. *Hudson,* 87 Cal.App. 282 [262 P. 43], to the point that conversion does not lie for alleged misappropriation of money derived from the sale of an interest in land because that action applies to money ''only where there is an obligation to keep intact or deliver the specific money in question and where such money can be

748

identified." The authorities support this general proposition.

■ *Haigler* v. *Donnelly, supra,* at page 681 says: "While it is true that money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved (*Baxter* v. *King,* 81 Cal.App. 192 [253 P. 172]), it is not necessary that each coin or bill be earmarked. When an agent is required to turn over to his principal a definite sum received by him on his principal's account, the remedy of conversion is proper." (To the same effect, see 89 C.J.S., § 23, p. 541; *Story* v. *Palmer,* (Tex. Civ. App.) 284 S.W. 331; *Calvada Inc.* v. *Fidelity & Deposit Co. of Maryland,* 139 N.Y.S.2d 92, 96; *Anderson Elec. Car Co.* v. *Savings Trust Co.,* 212 Mo.App. 400 [212 S.W. 60].) In the last cited case it is said at page 61: "[T]rover lies only for specific chattels wrongfully converted, and not for money had and received for payment of debts, money being the subject of conversion only when it can be described or identified as a specific chattel."

The complaint says the price paid was $11,200 and that defendant withholds the proceeds of sale from plaintiff and has converted same to his own use, to plaintiff's damage in the amount of $11,200. This is susceptible of the interpretation that the property was sold for cash and the entire price paid to defendant. If so, that money might be the subject of conversion within the doctrine of the Haigler and other cases above cited; we do not decide the specific point. ■ But plaintiff destroyed her claim of conversion by alleging that she "herewith ratifies the sale to the Ards." This was a definite waiver of the tort and an election to stand upon the resulting implied contract. (*Bank of America* v. *Hill,* 9 Cal.2d 495, 499 [71 P.2d 258]; *Los Angeles Drug Co.* v. *Superior Court,* 8 Cal.2d 71, 74 [63 P.2d 1124]; *Graner* v. *Hogsett,* 84 Cal.App.2d 657, 661 [191 P.2d 497].) " 'According to the well established principles of law, where a wrongful act is both a tort and a breach of contract, the plaintiff may waive the tort and sue in contract. By virtue of this rule it is well settled that where a person takes and sells the property of another, without authority, the party aggrieved may waive the tort and sue in *assumpsit* for the price received at such sale or for the value of the property so taken. The basis of this "waiver of tort" is that the plaintiff consents to the taking of his property and affirms the act of the wrongdoer. He treats it as a sale, and recovers the value due him under an implied contract of sale.' (1 Cal.Jur., p. 322.)" (*Bank of America* v. *Hill, supra,* 9 Cal.2d 495, 499.) The complaint

therefore stated a good cause of action because it showed the receipt and retention by defendant of the proceeds of a sale of plaintiff's property to which he had no right, and through which he was unjustly enriched.

Appellant claims that the evidence is insufficient to support the finding of liability on the part of defendant. Evidence favorable to respondent's cause, presumptively believed by the trial judge, establishes the following facts. ■ Plaintiff lived in Massachusetts and her son George in Los Angeles at the time she made her purchase; it was a purchase under an installment contract and she never acquired full title. She paid $1,200 down, which sum and other moneys paid on that contract constituted her own property, not George's. She gave George a written general power of attorney to manage and to sell or exchange the property. George was working for defendant at the time. The power, as the findings show, "did not authorize said George Shahood to sell or encumber the property for his own benefit. That defendant, Gilbert Cavin knew of the existence of the Power of Attorney and knew that the real property had been purchased in plaintiff's name. That defendant, Gilbert Cavin knew that George Shahood was acting for his own benefit in selling or encumbering the house and would use the funds obtained for his own benefit, but that he believed that plaintiff did not have any real interest in the property and did not therefore rely on the Power of Attorney." This was because George was a paroled convict and had told defendant that the property belonged to him but had been placed in the mother's name because a convict cannot hold title to property; that the purchase had been made with his own money. When the $1,500 loan was made by defendant in January, 1955, he knew George was acting for himself and would use the money for his own benefit; George asserted the mother's title and the power of attorney to be mere formalities, conveniences in holding and handling title by a paroled convict. Mrs. Shahood knew nothing of the loan or the transfer made to secure it, and there is no element of estoppel present to impede her asserting her rights. Having acquired record ownership of the contract with notice of plaintiff's rights and in violation of same, defendant became an involuntary trustee (Civ. Code, § 2224) for the benefit of plaintiff. The fact that he did not believe her to be the true owner could not excuse the violation of plaintiff's property rights. When he in turn sold to Ard, Mrs. Shahood had no knowledge of the deal and had given no express or

implied authority to transfer the property for the benefit of any one other than herself. Hence the agreement made with Ard was a violation of her rights. When she ratified the transaction by express declaration in her complaint she waived the wrong and transformed defendant's obligation into one of contract, a contract to pay over to her moneys received by defendant for her use and benefit. Having waived the tort she was no longer entitled to damages, but was limited to recovery on the basis of unjust enrichment.

■ Appellant correctly argues that there was error in awarding judgment for $3,410.15 because defendant had sold the property to Ard on contract, with no down payment, installments being payable at $114.50 a month (of which $64.50 went to pay plaintiff's obligation to January Company, the seller named in the contract which she had purchased) and that defendant had received but 17 such payments, making a present obligation to plaintiff of $850. Defendant sold the equity to Ard on June 1, 1955. At the time of rendition of judgment in January, 1957, 19 payments had accrued and the court found the aggregate to be $950 as of January 1, 1957. Those are the moneys found to have been received by defendant and withheld from plaintiff. The findings show that the trial judge awarded to plaintiff not only the $950 found to have been collected by defendant from Ard, but also the present value of the balance due on the contract. As the award must proceed upon the basis of implied contract growing out of unjust enrichment this latter phase of the computation, anticipatory recovery of moneys to become due in the future, was erroneous. (See *Brix* v. *Peoples Mut. Life Ins. Co.*, 2 Cal.2d 446, 450 [41 P.2d 537]; *Erreca* v. *Western States Life Ins. Co.*, 19 Cal.2d 388, 402 [121 P.2d 689, 141 A.L.R. 68]; *Lubert* v. *Chauviteau*, 3 Cal. 458, 463 [58 Am. Dec. 415]; *French* v. *Robbins*, 172 Cal. 670, 679 [158 P. 188]; *Canepa* v. *Sun Pacific, Inc.*, 126 Cal.App.2d 706, 712 [272 P.2d 860].) While defendant becomes liable for each payment as received by him, he cannot be subjected to a judgment covering any installment prior to receipt of same by him.

■ Appellant complains of inconsistency in the findings. Paragraph II thereof finds to be true the allegation that defendant knew that George Shahood had no authority to convey the property under the power of attorney for any reason other than to benefit plaintiff. Paragraph XIII says that defendant "believed that plaintiff did not have any real interest in the property and did not therefore rely on the Power of

Attorney." There is an undoubted inconsistency here. But the evidence is sufficient to support each of said findings; defendant's own testimony is the basis for the quoted portion of finding XIII; the power of attorney plus the undoubted right of the trial judge to disbelieve defendant's testimony that he accepted as true a felon's statement as to the ownership of the equity standing in the mother's name and covered by a formal power of attorney, afford ample support for finding II. Upon either theory plaintiff would be entitled to recover. Hence, defendant is not prejudiced by the conflict in the findings. "While it is true that these findings are inconsistent because they involve different mental attitudes on defendant's part, the inconsistency is immaterial since there is sufficient evidence to support a judgment for plaintiff on either theory." (*Martinez* v. *Martinez,* 41 Cal.2d 704, 706 [263 P.2d 617].)

It is contended that defendant cannot be liable to plaintiff because he believed George Shahood to be the owner and that plaintiff had no rights in the land. This is no defense to the appropriation of money or other property belonging to another. Prosser on Torts (2d Ed.), page 80: "While unavoidable accident is commonly recognized as a defense against liability, unavoidable mistake is in itself generally held to be no defense at all. However valid the excuse may be under the criminal law, in a civil action one who intentionally interferes with the person or property of another does so at his peril, and must assume the risk that he is wrong." This principle is illustrated by the law of tortious conversion. (See 89 C.J.S., § 45b, p. 552; *Culp* v. *Signal Van & Storage,* 142 Cal.App.2d Supp. 859, 861-862 [298 P.2d 162].) In the Culp case it is said: "One who, though honestly and in good faith, purchases personal property from one having no title thereto or right to sell the same is guilty of conversion. [P. 861] . . . '. . . (N)either good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, is of the gist of the action.' " (P. 862.)

In effect appellant argues that plaintiff cannot deny the authority of her agent to convey the property to defendant because she clothed him with apparent authority so to do, citing Restatement of Agency, § 261, p. 582. This contention cannot prevail, for the evidence establishes that defendant knew that the agent was acting for his own benefit and in denial of the rights of his principal; also that defendant did

not rely upon the power of attorney but upon the agent's statement that he himself owned the property. There is no element of estoppel of plaintiff in this case.

Finally it is said that a power of attorney in favor of a convicted felon is forbidden by Penal Code, § 2600,[1] is unlawful and void and therefore the parties to it will be left where they are found by the court. Assuming appellant's construction of the statute to be correct, the conclusion does not follow. If the power is void that fact leaves defendant with no shadow of a claim to the property or its proceeds. Plaintiff's right to recover does not rest upon invalidity of the power. It plays no part in the transfer from defendant to Ard and the illegality, if any, inhering in it does not infect the equity which grows out of defendant's receipt and retention of moneys belonging to plaintiff to which she is entitled in equity and good conscience.

Because of the excessive amount of the award the judgment must be and is reversed and the cause remanded to the lower court for further proceedings not inconsistent with the views herein expressed.

Moore, P. J., and Fox, J., concurred.

---

[1]Pen. Code § 2600: "A sentence of imprisonment in a State prison for any term less than life suspends all the civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority, or power during such imprisonment. But the Adult Authority may restore to said person during his imprisonment such civil rights as the authority may deem proper, except the right to act as a trustee, or hold public office or exercise the privilege of an elector or give a general power of attorney."