**In re DUO METAL & IRON WORKS, INC., Debtor.**

**DUO METAL & IRON WORKS, INC., Plaintiff,**

v.

**GENERAL IRON WORKS CORP., Defendant and Third Party Plaintiff,**

v.

**MID–ATLANTIC STEEL CORP., and John Cocivera, Third Party Defendants,**

and

**Industrial Valley Bank, Intervenor.**

**In re Salvatore COCIVERA and Mary Cocivera, his wife, Debtors.**

**GENERAL IRON WORKS CORP., Plaintiff,**

v.

**Salvatore COCIVERA, Defendant.**

**Bankruptcy Nos. 83–03987G, 83–03988G. Adv. Nos. 84–0143G, 84–0634G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 13, 1984.

Michael H. Kaliner, Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for debtors, Duo Metal & Iron Works, Inc. and Salvatore Cocivera.

C. David Krewson, Stuckert, Yates & Krewson, Newtown, Pa., for defendant and third party plaintiff, General Iron Works Corp. (Adversary No. 84–0143G).

Daniel B. Pierson, Robert T. Cohen, Pierson & Morris, P.C., Philadelphia, Pa., for third party defendants, Mid-Atlantic Steel Corp. and John Cocivera (Adversary No. 84–0143G).

Bonnie R. MacDougal, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for intervenor, Industrial Valley Bank.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

One of several issues presented for discussion in the matter at bench is whether we should pierce the corporate veil of an entity other than the debtor and subject that entity's president to one of its corporate liabilities. For the reasons expressed herein we conclude that the corporate veil should not be pierced.

The facts of this case are as follows:[1] The debtor is a designer and fabricator of metal work that filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") on October 13, 1984. The debtor's physical plant is housed in a complex that also serves as the site of another designer and fabricator of metal work, called the Mid-Atlantic Steel Corp. ("Mid-Atlantic"). The fate of both entities has been further interwoven by the fact that the debtor's president is Salvatore Cocivera ("Salvatore"), while Mid-Atlantic's president is his son, John Cocivera ("John"). Due to the physical proximity of the debtor and Mid-Atlantic, and the familial ties between the presidents of these two entities, on occasion the two men unofficially assisted each other in conducting the business of the other man's corporation. Notwithstanding this fact and the failure of the two corporations to comply fully with all the requisites of corporate formality, the two corporations remained separate

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

legal identities and were not operated as sole proprietorships.

Several months prior to the filing of the debtor's petition for reorganization, Mid-Atlantic contracted for the fabrication of metal with a company known as General Iron Works Corp. ("General"). Mid-Atlantic never paid General for the work which was performed and there is no dispute that General has a valid claim against Mid-Atlantic for $58,000.00.

■ Roughly contemporaneous with the signing of General's contract with Mid-Atlantic, Salvatore proposed to sell two pieces of equipment on behalf of the debtor. This equipment is encumbered by a security interest held by the intervenor in this case, Industrial Valley Bank ("IVB"). The debtor and General orally [2] contracted to sell the machinery for $68,000.00, with $10,000.00 being paid on delivery with a balance of $58,000.00 being deposited in an escrow account which would be released sixty days after delivery if the machinery continued to operate properly. The equipment was delivered and the deposit was paid but the funds in escrow were never released. Contrary to General's assertion, the contract did not provide that payment under this contract was contingent on Mid-Atlantic's payment under its contract with General. And General failed to prove that it justifiably relied on any statements made by Salvatore informing it that the equipment was not encumbered. The debtor failed to prove by a preponderance of evidence that it suffered consequential damages as a result of General's failure to release timely the escrow funds and the amount of damages it (the debtor) may have suffered. The debtor also lacked sufficient proof to establish that General's failure to release the funds was malicious.

The procedural history of this dispute began with the filing of the debtor's complaint (Adversary No. 84–0143) against General, the first count of which requests a turnover of the $58,000.00 escrow fund. In the second count the debtor seeks $1,200,-000.00 in consequential damages based on the debtor's allegation that General's failure to release the funds in escrow was malicious and caused the debtor to default on a loan obligation to IVB. Above we made the findings that the debtor was entitled to the $58,000.00 escrow fund but that it failed to prove that it suffered consequential damages.

■ General counterclaimed against the debtor requesting judgment in its favor for $10,000.00 which represents the deposit it advanced to the debtor for the purchase of the equipment at issue. General's theory for relief is based on Salvatore's allegedly fraudulent statement that the machinery was unencumbered. We conclude that the counterclaim is without merit since we found above that General did not rely on Salvatore's statement. Such reliance is an element of the tort of fraud. *Klemow v. Time, Inc.*, 466 Pa. 189, 197 n. 17, 352 A.2d 12, n. 17, *cert. den.* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976).

■ Under Adversary No. 84–0143, General also filed a third party complaint against Mid-Atlantic, Salvatore and John. On the basis of its contract with Mid-Atlantic, General sought in its first count a $58,-000.00 [3] judgment against that party. There is no dispute that the money is owed and that judgment should be entered in favor of General and against Mid-Atlantic. In the second count General sought relief against Salvatore, although this count has been dismissed and thus the merits of this count will not be discussed further.

**2.** A proposed written contract was drafted and signed by General but not by the debtor, and, thus, we cannot find that the written document is the embodiment of the parties' contract. Furthermore, there is inadequate proof for us to find that the terms of the written document exactly mirror the provisions of the oral contract adopted by the parties. Consequently, we have been able to deduce only from the testimo-

ny the terms of the oral contract that are essential to the adjudication of the issues before us.

**3.** Since this matter was an issue in dispute, we expressly find that it is mere coincidence that the amount in the escrow fund equals the amount of General's claim against Mid-Atlantic.

■ The third count of the third party complaint requests that we pierce Mid-Atlantic's corporate veil and hold John liable for General's $58,000.00 contract claim against Mid-Atlantic. John's liability to General is predicated on General's assertion that John committed fraud in procuring the contract with General since he never had any intention of having his corporation pay the charges which would ultimately accrue under that contract. It is axiomatic that the mere failure of a party to comply with the terms of a contract is not proof that that party lacked the intent to comply at the time he signed that binding agreement. *Blose v. Martens,* 173 Pa.Super. 122, 123, 95 A.2d 340 (1953). The record bears no further support of General's charge of fraud, and in light of the lack of any other bases for piercing the corporate veil,[4] relief on this count is properly denied.

On the dismissal of the second count of General's third party complaint, General filed a complaint against Salvatore, who is also a debtor under chapter 11, under Adversary No. 84–0634 seeking an exception to discharge apparently under 11 U.S.C. § 523(a)(2)(A) of the Code. In the complaint General asserts that Salvatore fraudulently induced it to enter into the contract with the debtor by intentionally misstating that the equipment at issue was unencumbered and that it has been damaged in an amount equal to the contract price of $68,000.00. In lieu of answering the complaint, Salvatore filed a motion to dismiss.

■ In pertinent part § 523(a) states that:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) * * *

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) * * *

    *        *        *        *        *        *

In resolving the counterclaim lodged by General in the other adversary matter addressed above, we found that General did not rely on the allegedly fraudulent statement by Salvatore. This lack of reliance is fatal to a cause of action under § 523(a)(2)(A). H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977) an S.Rep. No. 95–989, 95th Cong., 2d Sess. 78 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, at 5864 and 6320; 3 Collier on Bankruptcy ¶ 523.08[4], at 523–41 to 523–42 (15th ed. 1984); *Green v. Geyen* (In re Geyen), 11 B.R. 70, 71 (Bankr.W.D.La.1981). Under the doctrine of collateral estoppel[5] the finding we made above in Adversary No. 84–0143 that there was no reliance is binding in this proceeding. Since General has urged no grounds for an exception to discharge other than Salvatore's allegedly fraudulent statement, we will grant his motion for dismissal of the complaint and con-

4. In this jurisdiction the corporate veil is upheld unless specific, unusual circumstances call for an exception. The corporate entity is disregarded only when the entity is used to defeat the public convenience, justify wrong, protect fraud or defend crime. *DuSesoi v. United Refining Co.,* 540 F.Supp. 1260 (E.D.Pa.1982); *Chengelis v. Cenco Instruments Corp.,* 386 F.Supp. 862, (W.D.Pa.1951), *aff'd* 523 F.2d 1050 (3d Cir.1975).

5. The elements of collateral estoppel have been summarized as follows:

[T]here are at least four requirements which must be met before collateral estoppel effect can be given to a prior action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) [it] must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

*In re McMillan,* 579 F.2d 289, 291–92 (3d Cir. 1978); *Sachs v. Anthony Plumbing of Md., Inc.* (In re Anthony Plumbing of Md., Inc.), 39 B.R. 927, 930 (Bankr.E.D.Pa.1984). Each of the four elements of the doctrine has been met in the instant case.

sequently, we need not discuss Salvatore's other bases for dismissal.

▉▉▉ Lastly, we address the question of our jurisdiction to resolve this matter as we must under 28 U.S.C. § 157(b)(3).[6] Under Adversary No. 84–0143 the debtor's cause of action for turnover against General is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(E). General's counterclaim against the estate is likewise a core proceeding under § 157(b)(2)(B). Since the complaint in Adversary No. 84–0634 is for an exception to discharge it also is a core proceeding. § 157(b)(2)(I). According to § 157(b)(1) a bankruptcy judge may enter final judgments on all core proceedings and thus we will enter such final orders on the main complaint and counterclaim in Adversary No. 84–0143 and on the complaint in Adversary No. 84–0634.

▉▉▉ In counts one and three of its third party complaint under Adversary No. 84–0143, General has brought a breach of contract action against Mid-Atlantic and an action to pierce Mid-Atlantic's corporate veil so as to hold John personally liable on the same breach of contract claim. Since none of these three parties is a debtor in this proceeding we conclude that these two counts of the third party complaint represent exemplars of noncore proceedings. Each of these two counts of the third party complaint represents a cause of action brought by one nondebtor against another. Such suits are typically noncore proceedings. We may not enter final orders on noncore matters but since these two counts of the third party complaint are "related to a case under title 11," we must submit proposed findings of fact and conclusions of law such as those found in this opinion

6. § 157 Procedures

(a) * * *

(b)(1) Bankruptcy Judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) * * *

(5) * * *

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

\* \* \* \* \* \*

to the district court for the entry of a final order by that court. § 157(c)(1). Thus, we may only offer our recommendation on the final disposition of this aspect of the case. Accordingly, both an order and a recommendation follow.