R. Alexander MONTGOMERY, Plaintiff,

v.

FEDERAL INSURANCE CO., Defendant.

Civ. A. No. 92–0041.

United States District Court,
E.D. Pennsylvania.

Nov. 2, 1993.

Richard L. Scheff, Catherine E. Pappas, Douglas L. Overtoom, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for plaintiff.

Eric D. Freed, Cozen and O'Connor, Philadelphia, PA, Thomas McKay, III, Cozen & O'Connor, Westmont, NJ, for defendant.

### MEMORANDUM & ORDER

JOYNER, District Judge.

Presently before the Court is the motion for summary judgment of defendant, Federal Insurance Company, pursuant to Rule 56 of the Federal Rules of Civil Procedure. This matter stems from the complaint of plaintiff, Mr. R. Alexander Montgomery, alleging claims of breach of contract, fraud, bad faith,

conversion and tortious interference with contract against defendant pursuant to defendant's denial of an insurance claim made by plaintiff. Plaintiff filed the insurance claim when part of his collection of military orders, insignia and medals (the "Collection") valued at approximately two million dollars was allegedly stolen. Defendant has filed a counterclaim in this case alleging that plaintiff's claim was fraudulent and that defendant should recover attorney's fees, costs of investigation and costs of suit, pursuant to the Pennsylvania Insurance Fraud Statute, 18 Pa.C.S.A. § 4117.

In its motion, defendant states the following reasons why summary judgment should be granted in its favor. First, that plaintiff cannot prevail on the breach of contract claim because the evidence clearly shows that plaintiff misrepresented and concealed facts in order to obtain insurance coverage, and therefore has violated the concealment and fraud clause of the insurance policy, as well as Pennsylvania common law. Second, that based upon the evidence of fraud committed by plaintiff, there was good cause to deny plaintiff's claim and thus plaintiff's bad faith claim must fail. Third, there is no evidence to support plaintiff's claims of fraud or tortious interference with contract. Fourth, plaintiff paid the insurance premiums out of a contractual obligation, thus plaintiff's claim of conversion does not satisfy the requisite elements of that tort. Plaintiff's response to the motion for summary judgment raises several reasons why summary judgment should be denied with respect to all of these issues, except that plaintiff now stipulates that summary judgment is appropriate with regard to the tortious interference with contract claim (Count V of plaintiff's complaint).

## Standard

■ In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The court is required to determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmoving party. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2512. While the movant bears the initial burden of demonstrating an absence of genuine issues of material fact, the nonmovant must then establish the existence of each element of its case. *J.F. Feeser, Inc., v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3rd Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

## Facts

This is a case that involves claims of fraud by both parties. According to plaintiff, he is the victim of two "crimes" because his two million dollar Collection has been stolen and because defendant never intended to insure plaintiff and will not now pay out the insurance proceeds owed to him. According to defendant, plaintiff has committed insurance fraud by concealing the fact that his Collection was counterfeit and by now filing an insurance claim for the stolen items.

This saga began when plaintiff, an 82 year old man, began collecting various military orders, medals and insignia in late 1970. By 1983, he began to pursue a more directed goal with regard to his Collection when he met Mr. Alexander Tenzer, a man who held himself out as an expert in medals and decorations. An arrangement was made whereby Mr. Tenzer began to find various medals for plaintiff to purchase, he would then obtain the medals and sell them to plaintiff, making a commission in the process. Over a period of a couple of years, plaintiff paid at least $1,832,755.97 to Tenzer in connection with these sales. By 1985, plaintiff's Collection had been appraised at $4,352,085.00 by another medal expert, Mr. John Gross.

It was at this time that plaintiff decided to sell his Collection, in part to provide a lump sum of money to his wife in case he predeceased her, and in part because he owed a

substantial amount of money due to his pursuit of the Collection. In order to liquidate the Collection, he began to contact various auction houses in London, England through Mr. Peter Wesley–Burke, a distant relative who acted as plaintiff's agent. However, when representatives of various auction houses, such as Sotheby's, Inc., Spink and Son, Christie, Manson & Woods ("Christie's") and Glendinings, began to inspect his Collection for possible purchase, they concluded that the majority of pieces in the Collection were not authentic, and therefore they could not purchase the Collection. However, at the same time, plaintiff sold other pieces of the Collection and received offers to sell other pieces, in part from some of these same auction houses. However, despite numerous efforts undertaken by plaintiff and Wesley–Burke to sell the Collection throughout the years, the majority of it remained unsold.

Sometime in July 1990, plaintiff filed an insurance claim with defendant, claiming that a substantial part of the Collection, worth nearly two million dollars, had been stolen. Plaintiff claims that he entrusted the medals with Mr. Tenzer, the man from whom he originally bought the medals, with the hope that Tenzer could find a suitable buyer for the Collection. Plaintiff states that while Tenzer was authorized to exhibit the Collection, he was not authorized to dispose of or sell the Collection. When it appeared that a potential buyer, the Sultan of Brunei, was interested in viewing the Collection, plaintiff requested Tenzer to return it. Apparently Tenzer promised to do so, however, first he stalled and then he claimed he had sent it to another medal expert in Germany. Plaintiff never received the Collection from Tenzer. In October, 1991, defendant denied plaintiff's insurance claim.

## Discussion

### I. Breach of contract claim

Defendant first claims that summary judgment on plaintiff's breach of contract claim is warranted because defendant was entitled to rescind the insurance policy due to plaintiff's misrepresentations and fraudulent concealment.[1] Plaintiff makes several arguments in response to the motion for summary judgment on the breach of contract issue. First, plaintiff asserts that the insurance policy is a "valued" policy which means that it cannot be rescinded due to alleged misrepresentations based on value. Plaintiff essentially argues that because in valued policies the parties agree upon the value of the insured item, and because defendant had the opportunity to ascertain the value of the Collection by performing its own appraisal and did not do so, defendant cannot now deny the claim based on any alleged misrepresentations. Second, plaintiff argues that there are genuine issues of material fact regarding the elements of defendant's claim of misrepresentation. Third, plaintiff argues that defendant was not justified in relying upon the representations of plaintiff and Mr. Wesley–Burke. Finally, plaintiff argues that he had no obligation to disclose the opinions of the auction houses regarding his Collection because fraud only deals with misrepresentations of material facts and not opinions. Because we agree that defendant has not sustained its burden in showing that no genuine issue of material fact exists with regard to its fraud claim, we need not reach all of plaintiff's arguments here.[2]

In order to rescind an insurance policy for fraud or misrepresentation in Pennsylvania, an insurer must prove three elements. First, the insurer must prove that the representation was false. Second, the insurer must prove that the insured knew the representation was false when it was made or that it was made in bad faith. Finally, the insurer must prove that the representation was material to the risk being insured. *New York Life Ins. Co. v. Johnson*, 923 F.2d 279, 281 (3rd Cir.1991); *American Franklin Life*

---

1. Defendant bases this argument on Pennsylvania common law as well as on a "concealment or fraud" clause contained in the insurance policy which states "We do not provide coverage if you or any covered person has intentionally concealed or misrepresented any material fact relating to this policy before or after a loss."

2. Additionally, we note that plaintiff's argument on valued insurance policies need not even be considered by the Court because, as plaintiff admits, Pennsylvania does not have a valued policy statute.

*Ins. Co. v. Galati,* 776 F.Supp. 1054, 1059 (E.D.Pa.1991); *United Nat'l Ins. Co. v. J.H. France Refractories Co.,* 417 Pa.Super. 614, 612 A.2d 1371, 1377 (1992) *allocatur granted,* 533 Pa. 646, 622 A.2d 1377 (1993); *A.G. Allebach, Inc. v. Hurley,* 373 Pa.Super. 41, 540 A.2d 289, 294 (1988). Further, a representation is material if the insurer would not have insured the party had it known about the concealed information, if the information would have caused the insurer to demand a higher premium or if the information would have affected the insurer's ability to evaluate the degree and character of the risk. *New York Life,* 923 F.2d at 281; *American Franklin,* 776 F.Supp. at 1060, *Allebach,* 540 A.2d at 295. Moreover, the representation does not even have to relate to the claimed disability for which benefits are sought, as long as the representation is relevant to the risk assumed. *American Franklin,* 776 F.Supp. at 1060, n. 9 (citations omitted).

■ Defendant's claims of fraud center around two incidences involving Mr. Michael Mangini, a technical consultant for the personal lines division of defendant's parent corporation, Chubb & Sons. Mr. Mangini contacted plaintiff in 1988 in order to check the status of the Collection, which had already been insured by defendant. During a telephone conversation with plaintiff, Mr. Mangini was told about plaintiff's efforts to sell the Collection. When Mr. Mangini asked plaintiff why one particular auction house [3] did not purchase the Collection, plaintiff allegedly stated that the auction house had determined that the Collection "was in an area beyond their expertise." Memorandum from Mr. Mangini to Tom Gibson, attached to defendant's motion as part of Exhibit 15. Later, when Mr. Mangini went to plaintiff's house in order to examine the security for the Collection, Mr. Wesley–Burke showed him the Collection and stated that they were having a difficult time getting an appraisal of the Collection due to limited interest in it. Deposition of Mr. Mangini, p. 151–52; memorandum to underwriter from Mr. Mangini, p. 259c.

Defendant then provides evidence that had plaintiff informed it that the real reason the medals were sent back from the auction house was because of problems with the Collection's authenticity, it would have ceased insuring the Collection. Deposition of Mr. Robert Courtemanche, p. 177 ("If I had had any information regarding potential value problem with the medals at that point, combined with the sale activity going on ... It would have led us to get off that risk."). Moreover, Mr. Mangini testified that the information sought about plaintiff's efforts to sell the Collection was important because without the information, defendant would not be able to ascertain the amount of insurance coverage needed because it could not determine the value of the Collection. Defendant further states that plaintiff and Mr. Wesley–Burke clearly knew at the time they spoke to Mr. Mangini that the real reason the auction house did not purchase the Collection was because it had concluded the Collection was not authentic. As support for this argument, defendant offers a letter from a representative of Glendinings stating that the Collection was not genuine. Letter to Jay Remer, attached to defendant's motion as Exhibit 12. Defendant also provides evidence that at least four persons informed plaintiff that his Collection was not genuine before Mr. Mangini spoke to plaintiff and Mr. Wesley–Burke, and further argues that there is no evidence that any of the representatives of the auction houses ever told plaintiff they could not sell the Collection because it was "beyond their expertise."

Plaintiff has offered evidence showing that he was told on numerous occasions by representatives of English auction houses that many items in the Collection were forgeries, however, he simply did not believe the representatives. *See* plaintiff's deposition, pp. 29, 32, 34, 45. For example, plaintiff testified that when the representative from Sotheby's came to his house to examine the Collection, plaintiff was not impressed by him because he made a "very cursory examination" of the Collection. *Id.* at 27. He further states that

---

**3.** Although it is not clear from Mr. Mangini's deposition, the parties appear to be referring to an auction house called Glendinings.

he believed that the English auction houses were "setting him up" by purposefully telling him that his Collection was counterfeit in order for him to sell it to them at a much reduced price. *Id.* at 32, 34, 35, 46. As a result of the English auction houses telling him his Collection was counterfeit, plaintiff testified he lost faith in them very quickly. *Id.* at 34, 59. Furthermore, although many representatives of the auction houses concluded that some of the pieces were counterfeit, they also purchased or offered to purchase other parts of the Collection from plaintiff. For instance, one representative from Glendining's offered to sell the medals privately after stating they were not sure about the provenance of the medals.[4] *See* deposition of Mr. Peter Wesley-Burke, p. 85, 88. Further, plaintiff offered evidence of other "experts" in the field who did not think the Collection was counterfeit. Mr. Wesley-Burke testified that while Mr. Tenzer, Mr. Blass and Mr. Gross, persons who held themselves out as experts in German medals, would occasionally verify that some of the items were suspect, they were also of the opinion that the majority of the medals were genuine. *Id.* at 60, 107. Finally, plaintiff testified that when he was buying the medals, he had no reason to ever distrust Mr. Tenzer. Plaintiff's deposition at 50.

Based on all of the evidence, defendant has not sustained its burden in showing that no genuine issue of material fact exists. While defendant's evidence suggests there is no genuine issue with respect to the materiality of plaintiff's and Mr. Wesley-Burke's statements made to Mr. Mangini, there are questions of fact as to whether the statements made by them were false, and if so, whether

they were made in bad faith or with knowledge of their falsity. Given that plaintiff has introduced evidence which shows that both he and Mr. Wesley-Burke did not believe in the integrity of the English auction houses, a genuine issue of material fact exists as to whether their statements were false when they told Mr. Mangini that the Collection was not sold because it was beyond the auction house's expertise and because they could not get an appraisal of the Collection. Moreover, even if we were to conclude that the statements were false, it is still a question for the jury as to what plaintiff and Mr. Wesley-Burke believed at the time these statements were made. Plaintiff has offered more than enough evidence to show why he did not believe the opinions of the English auction houses. Whether that belief is reasonable, when reasonable minds could differ, is a question for the trier of fact.[5] *See Grimes v. Prudential Ins. Co. of America,* 401 Pa.Super. 245, 585 A.2d 29, 31 (1991) ("whether a misstatement of fact was made in bad faith is an issue for the jury"). As such, defendant cannot clearly show in light of this evidence that plaintiff and Mr. Wesley-Burke knew the statements were false when they were made, or that they were made in bad faith.

## II. Bad Faith Claim

Defendant next argues that summary judgment is warranted on plaintiff's bad faith claim because the compelling evidence of fraud established by defendant (discussed in the previous section) shows it had a reasonable basis to deny plaintiff's insurance claim. In response, plaintiff states that the reasons given by defendant in denying plaintiff's

---

4. Provenance is defined as the source or origin of the medals.

5. Furthermore, defendant's reliance on *Stone v. Those Certain Underwriters at Lloyd's,* 81 Ill. App.3d 333, 36 Ill.Dec. 781, 401 N.E.2d 622 (1980) is misplaced. In *Stone,* the court held that plaintiff did make a material misrepresentation on an insurance policy when the plaintiff failed to inform the insurance company that the same person who had sold plaintiff the objects of art had appraised them as being worth more than thirteen times the amount of the purchase price. *See id.,* 36 Ill.Dec. at 785, 401 N.E.2d at 626 ("[i]f plaintiff chooses to believe he was dealing in an arms length transaction with [the

dealer] and received the bargains represented to him, he is at liberty to do so. However, he cannot bring such naivete into the market place and fix upon others the consequences of his grossly mistaken judgment. This is especially true in policies of insurance which have traditionally called for good faith, openness and candor on the prospective insureds' part.").

Unlike plaintiff in *Stone,* in this case plaintiff has shown that several other people, including those he considered to be experts in German medals, affirmed his belief that the medals were genuine and that the English auction houses were not experts in German medals.

claim (that plaintiff and Mr. Wesley–Burke made material misrepresentations relating to insurance and that there had been no actual loss) were made in bad faith, and therefore, there was no reasonable basis to deny the claim.

■ In order to prevail on a bad faith claim, plaintiff must show that there was an absence of a reasonable basis for the insurer to deny plaintiff's claim, and that the insurer acted with knowledge or reckless disregard of the lack of a reasonable basis. *American Franklin Life Ins. Co. v. Galati*, 776 F.Supp. 1054, 1064 (E.D.Pa.1991); *see also Coyne v. Allstate Ins. Co.*, 771 F.Supp. 673, 677–78 (E.D.Pa.1991) (quoting Black's Law Dictionary 139 (6th ed. 1990), bad faith "means a breach of a known duty ... through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.").

■ In the case at bar, defendant has provided evidence to support its reasonable basis for denying the claim, ie., that it conducted an extensive investigation into plaintiff's claim and concluded that plaintiff had misrepresented and concealed facts regarding the authenticity of the Collection. Whether or not plaintiff has misrepresented such facts is not the issue which must be addressed in deciding the bad faith claim, however. What plaintiff must address is whether in fact defendant's denial of his claim was reasonable. Because plaintiff fails to establish that defendant's denial was unreasonable or that reasonable minds could even differ on that issue, we must grant summary judgment with regard to plaintiff's bad faith claim. *See J.H. France Refractories Co. v. Allstate Ins. Co.*, 396 Pa.Super. 185, 578 A.2d 468, 480 (1990), *allocatur granted*, 527 Pa. 634, 592 A.2d 1302 (1991) (where reasonable minds could differ as to whether insurer's acts in refusing to defend were reasonable, trial court properly held there was no bad faith by the insurer); *Bryant v. Federal Kemper Ins. Co.*, 542 A.2d 347, 352 (Del.Super.1987) (court granted summary judgment on bad faith claim where absence of evidence by insured to rebut insurer's evidence that its actions were reasonable for denying insured's claim).

As support for plaintiff's argument that there was bad faith in this case, plaintiff first states that defendant knew that rescission under the policy for fraud was not possible because it was a valued insurance policy. He then claims that because defendant has not cited to any Pennsylvania cases where rescission of a valued insurance policy under similar circumstances occurred, is further evidence of defendant's bad faith. However, as we previously stated in this opinion, plaintiff has conceded that Pennsylvania does not have a valued insurance policy statute, and as such, plaintiff's arguments do not suggest any type of bad faith on defendant's part in denying plaintiff's claim. Ironically, plaintiff himself has failed to include any cases in this section as evidence to support his claim.

Next, plaintiff argues that because defendant knew about the questions of authenticity of the Collection long before plaintiff made his insurance claim, defendant did not rely on plaintiff's representations, and as such, denial of the claim on such grounds is dishonest and therefore in bad faith. The key piece of evidence to support plaintiff's argument is a cryptic letter from Janet Greenfield to Kathy Kramaric [6] dated May 30, 1989 and stating that the Collection "is in Knoblauch Private Bank until the collection can be authenticated prior to sale. No date has been set as of yet for the sale." It further states "[c]overage will be required for the shipment to Geneva however details are not known as of yet. The insured is aware that we must have prior notification and details prior to shipment."

Again, this letter does not demonstrate any bad faith by defendant in denying plaintiff's claim. First, this letter does not prove there were actual doubts by defendant about the authenticity of the Collection. It is possible that this letter refers to any automatic authentification process that is necessary before selling a collection of medals allegedly worth four million dollars. Moreover, even if defendant was aware of possible problems

6. Although plaintiff makes no attempt to explain this letter or where it came from, it appears that one of the parties belongs to Chubb Insurance.

regarding the authenticity of the Collection, it does not matter whether or not defendant relied on such representations as plaintiff states. As previously stated, all that needs to be proven in order to rescind a contract for insurance is a false statement of fact that was material and plaintiff knew it was false or made it in bad faith. *See e.g. New York Life Ins. Co. v. Johnson,* 923 F.2d 279 (3rd Cir.1991). It matters not whether the insurer actually relied on the representation. Thus, even giving plaintiff the benefit of the doubt as to reliance, his argument must still fail. Defendant's reliance or lack thereof does not affect defendant's reasons for denying plaintiff's claim. Thus, plaintiff fails to dispute that defendant had a reasonable basis for denying his claim.

Finally, plaintiff argues that defendant's own investigation showed that Mr. Tenzer had taken possession of the medals and forwarded them to a third party, therefore, defendant knew of a loss and its denial of plaintiff's claim because there supposedly was not a loss was made in bad faith. However, plaintiff provides no evidence by means of an affidavit or deposition testimony to support this claim. As such, plaintiff has not demonstrated there are genuine issues of material fact with respect to his bad faith claim. *See* Fed.R.Civ.P. 56(e) (party may not rest upon mere denials or allegations in its pleadings but must set forth specific facts showing a genuine issue by affidavits or otherwise).

*III. Fraud*

■ Defendant next argues that plaintiff's claim of fraud must be dismissed because the record is devoid of any evidence that it intended not to honor its obligation under the insurance contract at the time the contract was entered into. Defendant submits evidence that the decision not to cover plaintiff's claim resulted after a thorough investigation of the claim and consultation with attorneys prior to taking any action. Deposition of Donald Ferguson, pp. 37–38. Plaintiff's evidence of fraud consists again of the letter from Janet Greenfield to Kathy Kramaric mentioned in the last section. Plaintiff submits that this letter is proof that defendant

knew of problems about the authenticity of the Collection, but that despite this knowledge, defendant continued accepting payments from plaintiff for the insurance coverage. Plaintiff further claims that this accepting of premiums subsequent to knowledge about valuation problems requires the "inference" that defendant misrepresented to plaintiff that it would insure the Collection notwithstanding any problems in valuation. Plaintiff's response to the motion for summary judgment, p. 47.

In Pennsylvania, fraud must be proven by clear and convincing evidence by showing the following elements: "1) a misrepresentation, 2) a fraudulent utterance, 3) an intention by the maker that the recipient will be induced to act, 4) justifiable reliance on the misrepresentation, and 5) damage to the recipient as a proximate result." *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 731 (3rd Cir.1992), *cert. denied,* —— U.S. ——, 112 S.Ct. 3034, 120 L.Ed.2d 903 (1992) (citations omitted); *Mellon Bank Corp. v. First Union Real Estate,* 951 F.2d 1399, 1409 (3rd Cir.1991) (citations omitted); *Bash v. Bell Telephone Co.,* 411 Pa.Super. 347, 601 A.2d 825, 831 (1992) (citations omitted).

Although plaintiff would rather deal with inferences to support his claim of fraud, the law in Pennsylvania requires evidentiary proof of a genuine issue of material fact in order to defeat a motion for summary judgment. The letter here is not evidentiary proof of a misrepresentation by defendant. As we discussed in the previous section, the letter alone does not prove that defendant had knowledge of any authentification problem with the Collection. Further, even giving plaintiff the most favorable inference from the letter, it still does not raise any question of fact from which a jury could reasonably determine that at the time defendant issued its renewal policy, defendant intended not to provide coverage. *College Watercolor Group, Inc. v. William H. Newbauer, Inc.,* 468 Pa. 103, 360 A.2d 200, 206 (1976) (for fraud, need a present intention to misrepresent one's state of mind). Indeed, as defendant points out, plaintiff provides no evidence to dispute the testimony of defendant's employee as to when the decision to

deny plaintiff's claim was made. Thus, the letter alone is insufficient to withstand defendant's motion for summary judgment. *See Jones v. Philpott,* 702 F.Supp. 1210, 1212 (W.D.Pa.1989) ("The presence of a mere scintilla of evidence in support of the *non* moving party's position is not sufficient to withstand the motion."). Without the letter, all plaintiff has is that defendant did not comply with the insurance contract. That alone does not prove an intent to violate defendant's insurance obligation at the time the renewal policy was issued. *In re Duo Metal & Iron Works, Inc.,* 45 B.R. 139, 142 (Bankr.E.D.Pa.1984). As such, summary judgment is granted for defendant with respect to plaintiff's claim of fraud.

### IV. Conversion

Finally, defendant asserts that it is entitled to summary judgment on plaintiff's claim of conversion because it does not constitute conversion to accept payments which are obligated by contract. Therefore, defendant's act of accepting the insurance premiums cannot amount to conversion. On the other hand, plaintiff argues that Pennsylvania recognizes a cause of action for conversion where money is due under the terms of a contractual agreement. *See Shonberger v. Oswell,* 365 Pa.Super. 481, 530 A.2d 112 (1987).

Conversion occurs when a party deprives the owner from his right of or use of or possession of a chattel, without the owner's consent and without lawful justification. *Shonberger v. Oswell,* 365 Pa.Super. 481, 530 A.2d 112, 114 (1987). Courts do not require the actor to have specific intent, rather, any intent to assert dominion or control over the chattel that is inconsistent with the owner's right is sufficient. *Id.* Moreover, money can be the subject of conversion. *Id.* However, before money can be converted, it must belong to the plaintiff. *Lee Tire and Rubber Co. v. Bonholtzer,* 38 Del.Co. 331, 81 Pa. D. & C. 218, 221 (1951). Thus, an action for conversion will not lie where an alleged converter borrowed money, even though he had an intent not to pay back the loan. *Id.* Nor is there conversion when the money is collected to satisfy a debt. *Id.* On the other hand, if a plaintiff entrusts money or goods with the defendant, with the intent that the defendant sell or transfer the goods and give the proceeds to the plaintiff, and defendant keeps the proceeds or applies it to his own use, there has been conversion. *Id.*

The issue raised by the parties in this case presents a novel issue in Pennsylvania law. While plaintiff contends that *Shonberger* is applicable, the facts in *Shonberger* are distinguishable from the facts in the present case. In *Shonberger,* the plaintiff and defendant had entered into a consignment agreement whereby the defendant agreed to sell plaintiff's goods, keep a percentage for himself and remit the proceeds from the sale of goods to plaintiff. Eventually, defendant failed to give the proceeds to plaintiff. The court held that proceeds from the sale of goods could be the basis for a conversion action because they belonged to plaintiff, thus the court reversed and remanded the trial court's decision which had held in favor of defendant.

Unlike *Shonberger,* the present case does not involve the proceeds from a sale of goods wrongfully held by defendant. Plaintiff sets out two bases for his conversion action in his complaint. First, that by making the misrepresentations previously discussed, defendant "wrongfully has taken for itself money of the plaintiff in the form of premiums." Complaint, para. 34. Second, that "[b]y refusing to pay the plaintiff the proceeds of the Policy, Federal wrongfully has retained for itself funds belonging to the plaintiff." Complaint, para. 33. Plaintiff's allegations technically turn on the issue of whether an insurance company that refuses to pay out a claim has converted the premiums. Thus, *Shonberger* is inapplicable because although a contract was involved in that case, the parties had specifically contracted that defendant was to pay plaintiff the proceeds of the sale of goods. Here, the contract provides for the payment of certain claims under specified circumstances. Thus, unlike in *Shonberger,* plaintiff's right to payment is not absolute.

After careful review of several cases in this jurisdiction and other jurisdictions, we find that plaintiff cannot bring a claim for conversion under the facts of this case. The

easy issue revolves around plaintiff's first claim that conversion occurred by defendant accepting the payment of premiums.[7] The law is clear that there can be no conversion in this situation. Defendant was merely accepting money that was owed to it by virtue of the parties' agreement. In return, plaintiff received the insurance policy. As defendant correctly states in its motion (although defendant neglects to cite any cases to support its point), conversion does not occur when one is merely satisfying a debt. *Lee Tire,* 38 Del.Co. 331, 81 Pa. D. & C. 218, 221 (1951). *See also Shahood v. Cavin,* 154 Cal. App.2d 745, 316 P.2d 700, 702 (1957) (Conversion does not occur "for money had and received for payment of debts, money being the subject of conversion only when it can be described or identified as a specific chattel.") Thus, merely accepting the payment of insurance premiums by plaintiff could not be the subject of conversion by defendant.

The other issue is whether defendant's refusal to pay proceeds on plaintiff's claim under the insurance contract for the stolen medals can be the subject of conversion. Under the facts of this case, we hold it cannot be the subject of conversion. First, while this question does not appear to have been addressed in Pennsylvania or this Circuit, the U.S. District Court for the Southern District of South Carolina has considered this precise issue. In *Dawkins v. National Liberty Life Ins. Co.,* 263 F.Supp. 119 (D.S.C. 1967), the court was faced with deciding whether or not it had jurisdiction over the matter. The parties were from different states, however, plaintiff was claiming damages because defendant insurance company had refused to pay out benefits for plaintiff's claim, which amounted to $600.00. Plaintiff sought punitive damages in the amount of $500,000. Thus, the issue was whether the monetary amount to invoke jurisdiction had been satisfied. In a previous action, the court dismissed the case on the theory that punitive damages for breach of contract were not available, thus, plaintiff did not satisfy the jurisdictional requirement and should refile in state court. *Dawkins v. National*

*Liberty Life Ins. Co.,* 252 F.Supp. 800 (D.S.C.1966).

In the second case, plaintiff had refiled in state court and the case was removed to the U.S. District Court. Defendant again moved to dismiss the case, and also to strike all references to punitive damages from plaintiff's complaint. Plaintiff's amended complaint however, added an allegation that defendant had converted the proceeds of the insurance policy by refusing to pay out plaintiff's claims. In holding that the new allegation was not sufficient for plaintiff to recover punitive damages, the court stated "To hold that an insurance company had willfully converted policy benefits to their own use by the same act of merely refusing to pay contested claims would overrule a long line of authorities that have held that such facts do not warrant the imposition of exemplary damages." *Dawkins,* 263 F.Supp. 119, 121 (D.S.C.1967). The court continued to state that the facts did not warrant a finding of conversion, or a finding of conversion accompanying a fraudulent act to a breach of contract. *Id.* In so stating, the court recited the rule that conversion "will not lie to enforce a mere obligation to pay money." *Id.; see also Belford Trucking Co. v. Zagar,* 243 So.2d 646, 648 (Fla.Dist.Ct.App.1971). Further, to adopt this view " 'would be equivalent to saying that every unpaid debt carries with it the implication of fraud on the part of the debtor; that the debtor has converted to his own use the money of another or that he has misappropriated that which was always his own.' " *Id.* at 121–22 (quoting *Holland v. Spartanburg Herald–Journal Co.,* 166 S.C. 454, 165 S.E. 203 (1932)).

We find the *Dawkins* court's reasoning to be applicable here. In this case, plaintiff is merely alleging that, as in *Dawkins,* defendant has failed to satisfy its contractual obligation to pay out on plaintiff's insurance claim, a mere failure to pay a debt which is allegedly owed to plaintiff. This was not intended by the courts to constitute conversion. Moreover, other courts have firmly accepted the doctrine that an action for conversion will not lie where damages asserted are essentially damages for breach of con-

---

**7.** Interestingly, plaintiff does not address this is-   sue in his response to defendant's motion.

tract. *Misabec Mercantile, Inc. v. Donaldson,* 853 F.2d 834, 838 (11th Cir.1988); *Transportes Aereos de Angola v. Ronair, Inc.,* 693 F.Supp. 102, 112 (D.Del.1988) (applying Florida law); *Hutton v. Klabal,* 726 F.Supp. 67, 73 (S.D.N.Y.1989). In *Transportes,* the court compared plaintiff's allegations in the complaint for breach of contract with the allegations for conversion, and concluded that they were essentially seeking damages for the same action, therefore, there could be no separate action for conversion.

The situation appears to be similar in this case. Plaintiff's claim of breach of contract by defendant's refusal to provide coverage for plaintiff's claim seeks compensatory damages for the full amount of the lost medals, plus interest, as well as the costs of attempts to locate the medals, costs of suit and attorney's fees. Plaintiff's claim for conversion seeks all of the above, plus punitive damages. Both claims seek injunctive relief for defendant to perform under the contract. The only other difference between the two claims is that plaintiff seeks an order directing defendant to hold all assets in a constructive trust for plaintiff under the conversion claim. However, given that there is no evidence of fraud or bad faith by defendant in this case, plaintiff's claim for punitive damages would fail because there is nothing left on which to base plaintiff's claim that defendant's act was "wanton, willful and outrageous." Complaint, para. 36. *See Travelers Ins. Co., v. Swolsky,* Civ. No. 91–7537, 1992 WL 150698, at 2, 1992 U.S.Dist.Lexis 8408, at 6, (E.D.Pa. June 15, 1992) (punitive damages are available for conversion if plaintiff proves defendant's conduct was outrageous or recklessly indifferent to plaintiff's rights). As such, plaintiff's conversion claim merely amounts to a claim for breach of contract. Thus, for all of the above reasons, plaintiff's conversion claim must fail, and summary judgment in favor of defendant should be granted on Count III of the complaint.

*V. Conclusion*

In sum, there is no evidence of bad faith or fraud presented by plaintiff in this case, therefore, summary judgment in favor of defendant is granted on Counts II and IV of the complaint. Summary judgment is also granted with respect to plaintiff's claim for conversion (Count III) because there can be no conversion under the facts of this case. Finally, summary judgment is granted with respect to Count V (tortious interference with contract) pursuant to the parties' agreement. Only Count I (breach of contract) remains because there are genuine issues of material fact as to whether defendant had a valid reason for rescinding the contract. As such, summary judgment is denied with respect to Count I. An appropriate order follows.

### ORDER

AND NOW, this 2nd day of November, 1993, upon consideration of the motion of defendant, Federal Insurance Company, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and all responses thereto, it is hereby ORDERED that defendant's motion is GRANTED with respect to Count II (Fraud), Count III (Conversion), Count IV (Bad Faith) and Count V (Tortious Interference) of plaintiff's complaint. It is further ORDERED that defendant's motion is DENIED with respect to Count I (breach of contract).